UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>   vs.<br><br>JESSE SIERRA and DUSTIN SIERRA,<br><br>            Defendants. | CR. 19-50110-JLV<br><br>ORDER |

### INTRODUCTION

A grand jury indicted defendants Jesse and Dustin Sierra on 11 counts of kidnapping, sexual assault, domestic violence and assault relating to alleged incidents of violence against Esther Wolfe in July 2019 and August 2018.[1] (Docket 31).   Pending before the court are defendants' pretrial motions.   Jesse moves to dismiss the indictment or compel election between counts on multiplicity grounds and to sever counts for trial.   (Dockets 69 & 71).   Dustin moves to suppress evidence seized pursuant to a search warrant; to dismiss the indictment or compel election between counts on multiplicity grounds; and to sever his case from Jesse's.   (Dockets 66, 73 & 74).   The government opposes each motion.   (Dockets 76, 82 & 83).

The motions were referred to Magistrate Judge Daneta Wollmann for a report and recommendation ("R&R") or order pursuant to 28 U.S.C.

---

[1]Defendants are brothers.   (Docket 90 at p. 3 n.1).   The court refers to Dustin and Jesse by their first names where necessary to avoid confusion.

§§ 636(b)(1)(A), (B) and the court's April 1, 2018, standing order.   The magistrate judge conducted an evidentiary hearing on the motion to suppress on February 7, 2020.   (Docket 86).   She took testimony from one witness.   <u>Id.</u>   The parties filed post-hearing briefing.   (Dockets 73, 78 & 79).   The magistrate judge issued two R&Rs and one order denying or recommending denial of all the pending motions.   (Dockets 90-92).   Jesse did not file any objections, but Dustin objected to each of the magistrate judge's orders.   (Dockets 93-95).

The Federal Magistrate Act provides two standards of review applicable to the pending objections.   28 U.S.C. § 636(b)(1).   If a party files written objections to the magistrate judge's proposed findings and recommendations as to a motion to suppress or dismiss, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   <u>Id.</u>   The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   <u>Id.</u>   If a party objects to an order on any other pretrial matter, "the court may reconsider . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."   <u>Id.</u> at § 636(b)(1)(A).

For the reasons given below, the court overrules Dustin's objections and adopts the R&Rs and order as modified by this order.

## I.    Facts

The pending motions require little factual analysis.   The factual summary set out here, derived from the testimony at the suppression hearing and the affidavit supporting the search warrant, is accordingly minimal.

Esther Wolfe was in an abusive dating relationship with Jesse.   (Docket 76-1 at ¶ 6).   Ms. Wolfe went missing on July 14, 2019.   (Docket 87 at p. 4). She reappeared at the hospital in Chadron, Nebraska, on July 21 with significant injuries.   Id. at p. 5; Docket 76-1 at ¶ 14.   Bureau of Indian Affairs ("BIA") Special Agent Molanna Clifford ("SA Clifford") interviewed Ms. Wolfe in Rapid City, South Dakota, on July 22.   (Docket 87 at p. 5).

Ms. Wolfe alleged defendants took her from Rapid City to Dustin's residence in Oglala, South Dakota, a community on the Pine Ridge Reservation, where Jesse sexually assaulted her.   (Docket 76-1 at ¶¶ 15-21).   She further stated Jesse physically assaulted her during the trip from Rapid City and at Dustin's residence, describing some of the assaults as defendants "testing" her. Id. at ¶¶ 17-18, 21-22.   Dustin "would not assist [Ms. Wolfe] during" the assault during the trip from Rapid City.   Id. at ¶ 19.   Ms. Wolfe stated she lost control of her bladder twice while in a bed at Dustin's residence.   Id. at ¶ 21.

Jesse transported Ms. Wolfe to other locations and further physically and sexually assaulted her.   Id. at ¶¶ 24-29.   Dustin later drove Jesse and Ms. Wolfe from the reservation to Chadron.   Id. at ¶ 29.   When Dustin took Jesse and Ms. Wolfe to Chadron, she would have had visible injuries.   Id.   Jesse later

dropped Ms. Wolfe off at the Chadron hospital.   Id. at ¶ 30.   Ms. Wolfe underwent a sexual assault examination.   (Docket 87 at p. 6).

SA Clifford was the sole witness at the suppression hearing.   She testified that she observed injuries on Ms. Wolfe's person consistent with her statement. Id.   The results of Ms. Wolfe's sexual assault examination further corroborated her statement.   Id.   SA Clifford had no reason to disbelieve Ms. Wolfe's statement.   Id.   On July 25, SA Clifford applied for and was granted a search warrant of Dustin's residence in Oglala and other locations where Ms. Wolfe alleged she was held captive.   Id. at pp. 6-7.   SA Clifford testified she did not omit any facts relevant to the probable cause analysis from the search warrant affidavit.   Id. at p. 8.   The warrant authorized law enforcement to seize "bedding and or evidence of biological matter on the bedding" at Dustin's residence. (Docket 76-1 at p. 16).   Law enforcement executed the warrant on July 25. (Docket 87 at p. 7).

Dustin executed an affidavit for his suppression motion.   (Docket 66-1 at p. 1).   He states Ms. Wolfe "never asked [him] for assistance" during the trip from Rapid City to Oglala.   Id.   He further states he "never 'tested' the victim in this case or had anything to do with such 'testing.' "   Id.   Dustin did not testify at the suppression hearing.

## II.   Suppression Motion

Dustin's suppression motion argues defects in the search warrant.   He asserts:

1.  The affidavit in support of the warrant application was untrue in material respects, <u>see</u> <u>Franks v. Delaware</u>, 438 U.S. 154 (1978);

2.  There was no probable cause to search his residence;

3.  The information cited to the magistrate judge in support of the application was stale; and

4.  The warrant lacked particularity.

(Docket 66 at pp. 1-2).   The magistrate judge rejected each argument.   (Docket 90).   Dustin reasserts these arguments in his objections.   (Docket 93).   Upon de novo review, the court overrules Dustin's objections and adopts the R&R as modified by this order.

## A.   <u>Franks</u>

The magistrate judge, finding SA Clifford credible, concluded Dustin's affidavit did not controvert facts cited in the search warrant application. (Docket 90 at pp. 3-4).   She further concluded that the application established probable cause even without the contested facts.   <u>Id.</u> at pp. 4-5.   Dustin objects to these conclusions.   (Docket 93 at ¶¶ 1-3).

Dustin first argues the magistrate judge erred by determining the search warrant affidavit did not state that Ms. Wolfe asked Dustin for help during the ride between Rapid City and Oglala.   <u>Id.</u> at ¶ 1; <u>see</u> <u>also</u> Docket 90 at pp. 3-4. The affidavit states: "[Ms. Wolfe] advised Dustin Sierra would not assist during this assault."   (Docket 76-1 at ¶ 19).   It does not explicitly state Ms. Wolfe asked for Dustin's help.   During the suppression hearing, SA Clifford agreed with defense counsel's characterization of Ms. Wolfe's statement as her "indicat[ing]

5

that Dustin . . . did not help her when she asked him to help her[.]"   (Docket 87 at p. 14).

The implication in the warrant affidavit is that Ms. Wolfe asked Dustin for help during the assault.   SA Clifford testified as much.   However, Dustin's attempt to generate a <u>Franks</u> issue by asserting Ms. Wolfe did not ask for help is unavailing.   The court need only hold a <u>Franks</u> hearing "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause[.]"   438 U.S. at 155-56.   Even crediting Dustin's self-serving affidavit, as the magistrate judge noted, the warrant affidavit is not false on its face; it does not state Ms. Wolfe asked Dustin for help.[2]   (Docket 90 at pp. 3-4).   Even assuming the affidavit's implication that Ms. Wolfe asked Dustin for help is false, it was not essential to the warrant's probable cause finding.

Dustin next contends the magistrate judge erred by finding SA Clifford's testimony more credible than his statement that he had nothing to do with any "testing."   (Docket 93 at ¶ 2).   The magistrate judge credited SA Clifford's testimony that Jesse and Dustin told Ms. Wolfe law enforcement was at Dustin's

---

[2]Dustin argues the government "should not be able to reverse its course at trial" and argue Ms. Wolfe asked him for help.   (Docket 93 at ¶ 1).   But the government never argued Ms. Wolfe did not ask Dustin for help.   The magistrate judge, not the government, pointed out that the warrant affidavit did not explicitly state Ms. Wolfe asked for Dustin's help.   There is no basis to exclude any evidence at trial on an estoppel theory.

residence to see if she would attempt to flee.   (Dockets 76-1 at ¶ 18 & 87 at p. 14).   The court likewise credits SA Clifford's testimony.   She testified in person and was cross-examined about her interview with Ms. Wolfe and her affidavit.[3]   Moreover, she is a trained law enforcement officer.   Dustin's affidavit, on the other hand, is short, undetailed and extremely self-serving. The multiple serious felony charges levied against him create an obvious incentive to lie about his involvement in Ms. Wolfe's ordeal.   It was not error to credit SA Clifford's testimony over Dustin's affidavit.

Finally, Dustin argues "[i]t does not matter if there was other evidence supporting the search warrant if there were material falsehoods relied upon to issue the warrant in the first instance."   (Docket 93 at ¶ 3).   This is not the law. A court evaluating a Franks argument must ask: "if the false information is excised[,]" does "the affidavit no longer establish[] probable cause[?]"   United States v. Daigle, 947 F.3d 1076, 1083 (8th Cir. 2020) (internal quotation omitted).   A warrant may not be invalidated simply because its supporting affidavit contains lies; the lies must be so material that probable cause would vanish without them.   The court is required to undertake the analysis Dustin

---

[3]Dustin argues "hearsay testimony of the victim as related to a government officer" cannot be more credible than his affidavit.   (Docket 93 at ¶ 2).   The Rules of Evidence do not govern search warrant applications.   Fed. R. Evid. 1101(d)(3).   Moreover, because only federal law enforcement agents and government attorneys are permitted to apply for federal search warrants, many warrant affidavits contain hearsay.   Fed. R. Crim. P. 41(b).   That the warrant affidavit in this case contains hearsay is no mark against its credibility.

claims does not matter.   In any event, the affidavit at issue here contained no falsehoods and so no <u>Franks</u> hearing is necessary.   The warrant was valid.

The objection is overruled and the R&R is adopted as modified by this order.

### B.    Probable cause

The magistrate judge concluded the warrant affidavit established probable cause to search Dustin's residence.   (Docket 90 at pp. 5-6).   She noted the affidavit recounted Ms. Wolfe's statement that she was held captive at Dustin's home and that she lost control of her bladder twice in a bed at his residence.   <u>Id.</u> Dustin objects, arguing only Ms. Wolfe's "uncertain recollection" connected his residence to any crimes.   (Docket 93 at ¶ 4).

Ms. Wolfe's statement to SA Clifford was corroborated by her physical injuries, the results of her sexual assault examination, and a phone call law enforcement received from a number belonging to the owner of a residence where Ms. Wolfe alleged she was held.   (Dockets 76-1 at ¶ 10-11, 28 & 87 at p. 6). "[L]aw enforcement officers are entitled to rely on information supplied by the victim of a crime, absent some indication that the information is not reasonably trustworthy or reliable."   <u>Clay v. Conlee</u>, 815 F.2d 1164, 1168 (8th Cir. 1987). The corroboration indicates Ms. Wolfe's statement was reliable.

Ms. Wolfe's statement also connected Dustin's residence to the alleged offenses.   Ms. Wolfe told SA Clifford she was held captive at Dustin's residence and urinated on a bed there.   "Probable cause exists, if under the totality of the

8

circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." United States v. Johnson, 848 F.3d 872, 876 (8th Cir. 2017) (internal quotation omitted).   Based on Ms. Wolfe's reliable statement to SA Clifford, there was a fair probability evidence of her captivity would be found at Dustin's residence.

The affidavit established probable cause for the issuance of the search warrant.   Dustin's objection to the contrary is overruled and the R&R is adopted on this issue.

### C.   Particularity

The magistrate judge concluded the warrant—which sought to seize only bedding from Dustin's residence—was sufficiently particular to pass constitutional muster.   (Docket 90 at pp. 6-7).   Dustin objects, alleging that the warrant was impermissibly broad because it allowed law enforcement to seize "evidence of crime, things illegally possessed, or property used to commit a crime[.]"   (Docket 93 at ¶ 5).   The court overrules the objection.

The court is uncertain why Dustin believes the warrant would allow seizure of any evidence of a crime from his residence.   In the space on the warrant for identifying the items to be seized, the affiant directed a reader to see Attachment A.   (Docket 76-1 at p. 2).   Attachment A lists only "[b]edding and or evidence of biological matter on the bedding" as items to be seized at Dustin's residence.   Id. at p. 16.   The warrant did not permit a broad seizure of any evidence of a crime.

9

"[T]he Fourth Amendment requires a warrant to describe particularly the things to be seized[.]"   United States v. Merrell, 842 F.3d 577, 581 (8th Cir. 2016) (internal quotation omitted).   "The particularity requirement can be satisfied by listing the items to be seized in the warrant itself or in an affidavit that is incorporated into the warrant."   United States v. Szczerba, 897 F.3d 929, 937 (8th Cir. 2018).   The particularity requirement prevents "general searches" and "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search."   Groh v. Ramirez, 540 U.S. 551, 561 (2004) (internal quotation omitted).

The warrant here easily satisfied the particularity requirement.   It sought to seize only bedding from Dustin's residence.   The warrant did not authorize a general search and clearly limited the items officers were authorized to seize. Dustin's objection to the contrary is overruled and the R&R is adopted on this issue.

### D.    Staleness

The magistrate judge concluded the warrant was not stale, pointing to the "mere four days" between when Ms. Wolfe appeared at the Chadron hospital on July 21 and the issuance of the warrant on July 25.   (Docket 90 at pp. 7-8). Dustin objects, arguing the "unlawful conduct" took place on July 13, his residence was "accessible by other persons" and that biological material was "at

risk of being altered or compromised by the elements." (Docket 93 at ¶ 6). The court overrules the objection.

"[I]nformation supporting a warrant can become stale if it is not sufficiently close in time to the issuance of the warrant and the subsequent search[.]" United States v. Petruk, 929 F.3d 952, 960 (8th Cir. 2019) (internal quotation omitted). There is "no fixed formula for deciding when information has become stale, but [a court] consider[s] the nature of the crime being investigated and the property to be searched." Id. (internal quotation omitted).

The information in the warrant affidavit was in no way stale. SA Clifford interviewed Ms. Wolfe on July 22 and the magistrate judge issued the warrant—based largely on Ms. Wolfe's statement—on July 25. The warrant was executed the same day it was issued. While conditions at Dustin's residence may have changed between the time Ms. Wolfe was allegedly held captive there and the time the search warrant was executed, law enforcement only needed a "fair probability" evidence would be found at Dustin's residence to obtain a warrant. Johnson, 848 F.3d at 876. Simply because evidence may have degraded or been tampered with does not render the warrant stale in these circumstances, where law enforcement promptly sought and executed the warrant after learning of the alleged crimes.

The court overrules the objection and adopts the R&R on this issue.

## II.    Motions to Dismiss

Both defendants filed motions to dismiss counts on multiplicity grounds. (Dockets 71 & 73).   However, Dustin's motion merely joined Jesse's as it pertained to counts in which Dustin is named and did not make any separate claims or analysis.   (Docket 73 at p. 1).   The magistrate judge recommended the motions be denied.   (Docket 91).   Only Dustin objected.   (Docket 94). Dustin argues Counts II & III as well as Counts V & VI are multiplicitous and either must be dismissed or the government must be forced to proceed on one of the counts in each pair.[4]   Id. at p. 1.   The court overrules his objections and adopts the R&R.

The multiplicity doctrine bars prosecution of crimes that violate the Double Jeopardy Clause.

> An indictment is multiplicitous if it charges the same crime in two counts.   Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.   Unless the two offenses each contain an element not found in the other, they are the same offense and double jeopardy bars additional punishment.

United States v. Bernhardt, 903 F.3d 818, 825 (8th Cir. 2018) (internal quotations and citations omitted).   To show multiplicity, "a defendant must

---

[4]Dustin's objections assert that Counts I & II are multiplicitous.   (Docket 94 at p. 1).   This is clearly a typographical error.   Counts I & II—kidnapping and aggravated sexual abuse—are quite dissimilar, whereas Counts II & III charge two incidents of sexual abuse.   (Docket 31 at pp. 1-2).   In his original motion joining Jesse's motion to dismiss, Dustin alleged Counts II & III were multiplicitous and the magistrate judge evaluated those two counts.   The court therefore considers whether Counts II & III are multiplicitous.

12

show that the two offenses charged are in law and fact the same offense."
United States v. Roy, 408 F.3d 484, 491 (8th Cir. 2005) (internal quotation
omitted).

### A.    Counts II & III

Counts II & III of the indictment charge defendants with sexually
assaulting Ms. Wolfe by force, including attempt and aiding and abetting
theories of liability, near Oglala between July 13 and July 21, in violation of
18 U.S.C. § 2241(a)(1).    (Docket 31 at p. 2).   The statutory citations for each
count show that Count II alleges penile-vaginal or penile-anal rape and Count III
alleges penile-oral rape.   Id. (citing 18 U.S.C. §§ 2246(2)(A), (B)).   To the court's
knowledge, the government does not allege Dustin sexually assaulted Ms. Wolfe.
(Docket 87 at pp. 12-13).

Precedent from the United States Court of Appeals for the Eighth Circuit
forecloses Dustin's argument.   "[A]ggravated sexual abuse is a separate-act
offense[,]" meaning "engaging in multiple sexual acts (as listed in § 2246(2))
would amount to multiple violations . . . and would leave the perpetrator
susceptible to multiple punishments[.]"[5]   United States v. Two Elk, 536 F.3d
890, 899 (8th Cir. 2008).   The indictment charges Dustin with facilitating two
separate sexual assaults: a penile-vaginal or penile-anal assault and a

_____

[5]Two Elk analyzed § 2241(c), which prohibits sexual assault of children.
Defendants are charged with violating § 2241(a)(1), which criminalizes forcible
sexual assault.   But both subsections rely on the same definitions of sexual acts
found in § 2246(2).   The court understands Two Elk to govern multiplicity
arguments made against § 2241(a)(1) and Dustin does not argue otherwise in his
objections.

penile-oral assault.   Under Two Elk, these separate assaults are separately punishable.   There is no multiplicity.

Dustin argues Two Elk was wrongly decided.   (Docket 94 at p. 1). Whatever the merits of that argument, the court has no authority to disregard binding precedent.   Dustin also asserts the indictment does not allege he "knew any crime was going to be committed or that he acted in any manner to aid in the commission of the offense."   Id.   "[F]ederal criminal procedure does not provide for a pre-trial determination of sufficiency of the evidence."   United States v. Ferro, 252 F.3d 964, 968 (8th Cir. 2001) (internal quotation omitted).   If the government cannot show at trial that Dustin aided and abetted Jesse's alleged sexual assaults, he may move for a judgment of acquittal under Federal Rule of Criminal Procedure 29.

The objection is overruled and the R&R is adopted as modified by this order.

### B.    Counts V & VI

Counts V & VI of the indictment charge defendants with assault resulting in serious bodily injury and assault of a dating partner by strangulation. (Docket 31 at p. 3).   The indictment alleges Ms. Wolfe is the victim in both counts and that the assaults took place between July 12 and July 21 near Oglala.   Id.   Dustin argues an assault resulting in serious bodily injury necessarily encompasses assault by strangulation.   (Docket 94 at pp. 1-2).

14

As the magistrate judge noted, each of these offenses requires proof of an element which the other does not.   (Docket 91 at pp. 5-6).   Assault resulting in serious bodily injury requires proof of serious bodily injury.   18 U.S.C. § 113(a)(6).   Serious bodily injury "means something more than slight bodily injury, but not necessarily life threatening injury.   It does not require a high probability of death. . . . Rather, it is a bodily injury of a grave and serious nature."   United States v. Two Eagle, 318 F.3d 785, 791 (8th Cir. 2003) (internal citation omitted).   Assault of a dating partner by strangulation requires proof of strangulation or suffocation and that the victim is a spouse, intimate partner or dating partner of the perpetrator.   18 U.S.C. § 113(a)(8).

The government also asserts the facts of each alleged assault are distinct. It states trial evidence will show Jesse strangled Ms. Wolfe during the trip from Rapid City to Oglala but that the assaults resulting in serious bodily injury occurred separately.   (Docket 83 at pp. 7-8).   Dustin does not challenge these factual assertions or contend Counts V & VI stem from the same incident.

The court recognizes a multiplicity problem could arise where both assault resulting in serious bodily injury and assault of a dating partner by strangulation are charged based on a single incident.   In many cases, assault by strangulation will no doubt cause serious bodily injury, collapsing the distinction between the two offenses.   But that situation is not present in this case.   Here, the record shows Counts V & VI are based on separate instances of assault.   The two charges are not identical in law and fact.   Roy, 408 F.3d at 491.

The objection is overruled and the R&R is adopted as modified by this order.

### III.   Motions to Sever

Defendants each filed motions to sever.   Jesse moved to sever two sets of counts for separate trials.   (Docket 69).   Dustin joined in the motion.   (Docket 73 at pp. 1-2).   Dustin also moved to sever his case from Jesse's for trial. (Docket 74).   The magistrate judge denied the motions.   (Docket 92).   Dustin objected.   (Docket 95).   Reviewing the magistrate judge's order for clear error, see 28 U.S.C. § 636(b)(1)(A), the court overrules Dustin's objections.

#### A.   Joinder of counts

Dustin is named as a defendant in six of the indictment's 11 counts. (Docket 31).   He is not named in Counts VII through XI, which accuse Jesse of kidnapping, strangling as well as physically and sexually assaulting Ms. Wolfe in August of 2018.   Id. at pp. 4-5.   Dustin moved to sever Counts I through VI from Counts VII through XI, joining Jesse's motion seeking the same relief.[6] (Docket 73 at pp. 1-2).   He argued the criminal offenses alleged in Counts I through VI were not properly joined with Counts VII through XI under Federal Rule of Criminal Procedure 8(b) and that joinder would prejudice him.   Id.   The

---

[6]In a single sentence in his motion seeking to sever defendants, Dustin also argued Counts I & IV should be severed for trial from Counts II, III, V & VI. (Docket 74 at p. 6).   The magistrate judge rejected this argument.   (Docket 92 at pp. 6-7).   Dustin's objection on this issue argues only that insufficient evidence supports the aiding and abetting theory alleged in Counts II, III, V & VI. (Docket 95 at p. 2).   He cannot litigate the sufficiency of the government's evidence before trial.   Ferro, 252 F.3d at 968.   The court finds the magistrate judge's ruling was not clearly erroneous.   The objection is overruled.

16

magistrate judge rejected these arguments.   (Docket 92 at pp. 3-5, 9-12).
Dustin objects, asserting that joinder of these counts would prejudice his right to
a fair trial because of the "sheer magnification of charges" and because the jury
would blame him for "the alleged sins of his brother[.]"   (Docket 95 at pp. 1-2).

"When a defendant moves for a severance, a district court must first
determine whether joinder is proper under Federal Rule of Criminal Procedure
8."   United States v. Darden, 70 F.3d 1507, 1526 (8th Cir. 1995).   "Under Rule
8, multiple counts can be charged in a single indictment as long as the offenses
are (1) of the same or similar character; (2) based on the same act or transaction;
or (3) constitute parts of a common scheme or plan."   United States v. Garrett,
648 F.3d 618, 625 (8th Cir. 2011) (citations omitted).   "The propriety of joinder
is to be determined from the face of the indictment. . . . The factual allegations in
the indictment must be accepted as true."   United States v. Massa, 740 F.2d
629, 644 (8th Cir. 1984) (internal citations omitted), overruled on other grounds
by United States v. Inadi, 475 U.S. 387 (1986).   "If joinder is proper, the court
still has discretion to order a severance under Federal Rule of Criminal
Procedure 14.   These rules are to be 'liberally construed in favor of joinder.' "
Id. (quoting United States v. Rimell, 21 F.3d 281, 288 (8th Cir. 1994)).

"Under Rule 14, a district court may sever [counts] if it appears that a
defendant is prejudiced by a joinder of offenses[.]"   Darden, 70 F.3d at 1527
(internal quotation marks and brackets omitted).   "When joinder is proper
under Rule 8, the defendant seeking a severance has the burden to demonstrate

17

how the joint trial prejudiced his or her right to a fair trial." Id. (citations omitted).   "Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that the defendant would have had in a severed trial.   There is a strong presumption against severing properly joined counts." Garrett, 648 F.3d at 625-26 (internal quotations and citations omitted).

Joinder was proper.   Counts I through VI are "of the same or similar character" as Counts VII through XI.   Fed. R. Crim. P. 8(a).   As the magistrate judge noted, these two sets of counts allege the same type of crime: kidnapping, raping, and assaulting Ms. Wolfe.   (Docket 92 at pp. 3-5).   The alleged offenses took place less than a year apart.   See Garrett, 648 F.3d at 625 (approving 15-month gap between offenses).   Moreover, evidence of the 2018 assaults may well have been admissible against Jesse under Federal Rule of Evidence 404(b) had they not be charged.[7]   Id. (evaluating whether evidence of offenses would be admissible under Rule 404(b) as part of joinder analysis).

Nor is there sufficient prejudice to justify severance, especially for Dustin. The jury will be able to easily separate evidence on Counts VII through XI from the case against Dustin, as he is not named in any of those counts and, so far as

---

[7]Dustin conclusorily asserts this evidence would not be admissible under Rule 404(b).   (Docket 95 at p. 1).   It certainly would not be admissible against him, as there is no allegation he participated in the 2018 assaults.   But there is a substantial likelihood it would have been admissible against Jesse, even in a joint trial, because of the similarity of the 2018 and 2019 assaults.   See United States v. Williams, 796 F.3d 951, 958-59 (8th Cir. 2015) (test for admitting Rule 404(b) evidence).

the court is aware, did not participate in those assaults.   Whatever evidence is admitted on Counts VII through XI will not pertain to Dustin at all.   This is not a situation presenting the danger of cumulative evidence overwhelming a jury's ability to carefully render a verdict on each separate count.   The court will give limiting instructions at trial requiring the jury to consider the cases against each defendant separately.   See United States v. Robinson, 781 F.3d 453, 461 (8th Cir. 2015) (noting that jury instructions can limit the risk of prejudice).   The nature of this case lends itself well to compartmentalization and the court finds the risk of prejudice in joining these counts is low.

The magistrate judge's order denying severance of Counts I through VI from Counts VII through XI was not clearly erroneous.   Dustin's objection is overruled and the order is affirmed.

### B.    Joinder of defendants

Dustin argues joinder of his case to Jesse's was improper and that joinder prejudices his right to a fair trial.   (Dockets 74 & 95 at pp. 2-4).   In particular, he asserts the weight of the evidence against Jesse will taint the jury's evaluation of the case against him and that Jesse would give exculpatory testimony in a severed trial.   (Docket 95 at pp. 3-4).   The magistrate judge disagreed.   (Docket 92 at pp. 8-9, 12-16).   The court finds the magistrate judge's ruling on this issue was not clearly erroneous and affirms.

"To properly join defendants for trial, the indictment must allege that the defendants participated in the same act or transaction, or in the same series of

19

acts or transactions, constituting an offense or offenses.   It is not necessary that all defendants be charged in each count, and the prerequisites for joinder are liberally construed in favor of joinder."   United States v. Morris, 723 F.3d 934, 941 (8th Cir. 2013) (internal quotations and citation omitted); see also Fed. R. Crim. P. 8(b).   "The district court may sever trials if it appears that compelling or severe prejudice will result to the defendant. . . . Prejudice is some appreciable chance that defendants would not have been convicted had the separate trial they wanted been granted."   United States v. Young, 753 F.3d 757, 777 (8th Cir. 2014) (internal quotations and citations omitted); see also Fed. R. Crim. P. 14(a). "A joint trial is preferable because it gives the jury the best perspective on all of the evidence and, therefore, increases the likelihood of a correct outcome."   Id. at 778 (internal quotation omitted).

Joinder was proper.   The indictment alleges both Dustin and Jesse took part in the same "series of acts or transactions"—the July 2019 offenses against Ms. Wolfe.   Fed. R. Crim. P. 8(b).   Dustin asserts he "never had anything to do" with the offenses alleged in Counts II through VI.[8]   (Docket 95 at p. 3).   But in evaluating the propriety of joinder, "[t]he factual allegations in the indictment must be accepted as true."   Massa, 740 F.2d at 644.   Taking it as true that

---

[8]Dustin also argues he is not named as a defendant in Counts VII through XI.   (Docket 95 at pp. 3-4).   But "defendants need not be charged in each count."   Fed. R. Crim. P. 8(b).   And, as discussed below, the court concludes evidence presented against Jesse on the August 2018 counts will not prejudice Dustin.

Dustin aided and abetted Jesse in carrying out the offenses alleged in Counts I through VI, their cases are properly joined for trial.[9]

Dustin did not show sufficient prejudice to merit severance.   He first asserts the evidence against Jesse will prejudice the trial against him.   (Docket 95 at p. 3).   He cites United States v. Baker, 98 F.3d 330 (8th Cir. 1996) in support of his argument.   Id. at pp. 2-3.   Baker concerned charges of knowingly possessing ricin, an "extremely deadly" toxin, for use as a weapon levied against two defendants.   98 F.3d at 333.   The Eighth Circuit concluded Mr. Baker's trial should have been severed from his codefendant's because "[m]ost of the evidence was properly admissible only against" the codefendant.   Id. at 335. The codefendant was involved in a conspiracy and statements from that conspiracy were admissible against him, prejudicing Mr. Baker.   Id.   Given the "extremely serious and admittedly sensational nature" of the offense, the Circuit concluded it was the "rare case" in which the jury could not compartmentalize the evidence against each defendant.   Id.

This case does not resemble Baker.   The government does not allege Jesse was in a conspiracy with other third parties, with Dustin as a marginal participant.   Dustin does not assert in his objections that Jesse or other third parties made statements which would be admissible against Jesse, but not

_____

[9]Dustin asserts "judicial economy" requires dismissing counts now for lack of evidence, rather than declare a mistrial.   (Docket 95 at p. 3).   Whatever the benefits of such a procedure, the court has no authority to evaluate the sufficiency of the government's evidence before trial.   Ferro, 252 F.3d at 968.

him.[10]   The evidence of the 2019 offenses, in which Dustin is alleged to have played a significant facilitative role, will be admissible against both defendants. While the alleged offenses are certainly serious, they are not unusual or unduly sensational by the standards of this court, which often tries cases involving violent offenses.   The alleged offenses do not approach the "sensational nature" of the attempted biological warfare charged in Baker.   98 F.3d at 335.

Moreover, the court finds the facts of this case lend themselves well to compartmentalization.   As noted above, Dustin is not charged with involvement in the 2018 offenses.   Given the bright temporal line in this case, the jury will no doubt be able to properly assess the evidence on each set of counts individually against the defendants.   Simply because the evidence may be stronger against Jesse does not justify severance.   United States v. Benedict, 855 F.3d 880, 884 (8th Cir. 2017) ("Varying strength in the evidence against each defendant does not require a severance.").   Here, as in most joint trials, "the risk of undue prejudice is best cured through cautionary instructions to the jury[.]"   United States v. Boone, 437 F.3d 829, 838 (8th Cir. 2006).

Finally, Dustin's objections conclusorily assert Jesse would testify on his behalf if the cases were severed.   (Docket 95 at pp. 3-4).   The court is assured that "a further showing will be made" on this point.   Id. at p. 3.   In his original

---

[10]Dustin made this argument in his motion to sever.   (Docket 74 at p. 4). The magistrate judge, after ordering the government to produce Jesse's statements for an *in camera* review, concluded they did not implicate Dustin. (Docket 92 at pp. 13-15).   Dustin does not object to this finding and the court, after independently reviewing the statements, adopts it.

motion, Dustin claimed Jesse would "exonerate" him by testifying his only involvement in the offenses was to give Jesse and Ms. Wolfe rides "at their joint request." (Docket 74 at p. 4).  The magistrate judge rejected this argument, see Docket 92 at pp. 15-16, and the court does as well.

The court is "not required to grant severance simply because [Dustin] claim[s] he need[s] a separate trial in order to call [Jesse] as a witness." United States v. Blaylock, 421 F.3d 758, 766 (8th Cir. 2005).  Dustin must make "a firm representation that [Jesse] would be willing to testify on [his] behalf" and "must show that [Jesse's] testimony would be exculpatory." United States v. Ali, 799 F.3d 1008, 1023 (8th Cir. 2015) (internal quotation omitted).  The Eighth Circuit has consistently rejected severance arguments based on the possibility of a codefendant's exculpatory testimony where a defendant offers only conclusory promises about the testimony.  See, e.g., Ali, 799 F.3d at 1023; United States v. Crumley, 528 F.3d 1053, 1063 (8th Cir. 2008); Blaylock, 421 F.3d at 766-67.

Dustin made only conclusory promises that Jesse would testify on his behalf.  He did not provide, for example, a written statement from Jesse agreeing to testify.  He did not ask the magistrate judge or this court to hold a hearing at which he could call Jesse to testify.  He does not state whether Jesse would waive his Fifth Amendment privilege to exonerate him at trial.  Dustin asserts "a further showing will be made" about Jesse's willingness to testify, but does not explain why that showing could not have been made to the magistrate judge or this court.  (Docket 95 at p. 3).

The court is left only with the Dustin's self-serving representations in his briefing.   The proposed testimony—that Dustin's involvement in the offenses was limited to providing transportation—would corroborate Ms. Wolfe's statement in several respects and would place Jesse at the scenes of some of the alleged assaults.   It would be highly incriminatory.   The court will not lightly infer that Jesse is willing to damage his own trial prospects to exonerate his brother.   The court concludes Dustin "neglected to offer a firm representation that [Jesse] [is] willing to testify, but simply stated that he w[ill] call [Jesse] to testify and that h[is] testimony w[ill] exculpate him."   Crumley, 528 F.3d at 1063.   This is not enough.

The court finds the magistrate judge did not clearly err in denying Dustin's motions to sever.   The court affirms her order denying severance, as modified by this order.   Dustin's objections to the contrary are overruled.

## IV.   Remaining Motions

As noted above, Jesse did not object to any of the magistrate judge's R&Rs or orders.   Much of the analysis in this order rejecting Dustin's objections encompasses Jesse's arguments made to the magistrate judge as well.   The court reviewed the magistrate judge's rejections of Jesse's motions and finds no

error, clear or otherwise.[11]   The court adopts or affirms, as appropriate, the portions of the magistrate judge's R&Rs and order pertaining to Jesse.

**ORDER**

For the reasons given above, it is

ORDERED that defendant Dustin Sierra's objections to the magistrate judge's order denying severance (Docket 95) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's order denying severance (Docket 92) is affirmed as modified by this order.

IT IS FURTHER ORDERED that defendants' motions to sever (Dockets 69, 73 & 74) are denied.

IT IS FURTHER ORDERED that defendant Dustin Sierra's objections to the magistrate judge's report and recommendation concerning the motions to dismiss (Docket 94) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation concerning the motions to dismiss (Docket 91) is adopted as modified by this order.

IT IS FURTHER ORDERED that defendants' motions to dismiss (Dockets 71 & 73) are denied.

---

[11]A district court's standard of review of a magistrate judge's R&R or order to which no party objects is not well defined in this circuit.   Boss v. Ludwick, 863 F. Supp. 2d 845, 852-53 (N.D. Iowa 2012) (concluding review for clear error is appropriate).

IT IS FURTHER ORDERED that defendant Dustin Sierra's objections to the magistrate judge's report and recommendation concerning his suppression motion (Docket 93) are overruled.

IT IS FURTHER ORDERED that the magistrate judge's report and recommendation concerning defendant Dustin Sierra's suppression motion (Docket 90) is adopted as modified by this order.

IT IS FURTHER ORDERED that defendant Dustin Sierra's motion to suppress (Docket 66) is denied.

IT IS FURTHER ORDERED that a scheduling order returning this case to the trial calendar shall issue.

Dated May 5, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE