UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JESSE SIERRA and DUSTIN SIERRA,<br><br>Defendants. | 5:19-CR-50110-JLV<br><br><br>REPORT AND RECOMMENDATION |

Pending is Defendant Jesse Sierra's Motion to Suppress (Doc. 228), which Dustin Sierra moved for joinder.[1] A hearing was held on Wednesday, July 7, 2021. Defendants were personally present and represented by their attorneys of record. The Government was represented by the Assistant United States Attorney Heather Sazama. Four witnesses testified at the hearing, and forty-four exhibits were received into evidence. Post-hearing briefing concluded on September 13, 2021. Based on careful consideration of all the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## **RECOMMENDATION**

It is respectfully recommended that Defendant Jesse Sierra's Motion to Suppress be denied.

---

[1] The government accurately sets forth the confusing nature of the pleadings as it pertains to this suppression motion. Nevertheless, the court addresses the merits of the motion as it relates to both Defendants' request to suppress the evidence arising from the search of Michael Sierra's property on July 25, 2019.

## JURISDICTION

Defendant Jesse Sierra is charged in a Superseding Indictment with Kidnapping in violation of 18 U.S.C. §§ 1201(a)(2), 1153, and 2; Aggravated Sexual Abuse by Force, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(A), and 1153; Aggravated Sexual Abuse by Force, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(B), and 1153; Interstate Domestic Violence, in violation of 18 U.S.C. §§ 2261(a)(2) and 2; Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6), 1153 and 2; Assault by Strangulation of a Dating Partner, in violation of 18 U.S.C. §§ 113(a)(8), 1153 and 2; Kidnapping in violation of 18 U.S.C. §§ 1201 and 1153; Aggravated Sexual Abuse by Force, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(B) and 1153; Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6) and 1153; Interstate Domestic Violence, in violation of 18 U.S.C. § 2261(a)(2); and Assault by Strangulation of a Dating Partner, in violation of 18 U.S.C. §§ 113(a)(8) and 1153.  (Doc. 201).

Defendant Dustin Sierra is charged in a Superseding Indictment with Kidnapping, in violation of 18 U.S.C. §§ 1201, 1153 and 2; Interstate Domestic Violence, in violation of 18 U.S.C. §§ 2261(a)(2) and 2; Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6), 1153 and 2; and Assault by Strangulation of a Dating Partner, in violation of 18 U.S.C. §§ 113(a)(8), 1153 and 2.  (Doc. 201).  The pending Motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Chief Judge Jeffrey L. Viken's Standing Order dated April 1, 2018.

## **PRODEDURAL HISTORY**

Defendant Jesse Sierra's motion seeks to suppress specific evidence that was seized pursuant to the July 25, 2019, search warrant. Specifically, he seeks to suppress "signs of digging" or a "gravesite" and a "metal garden tool with wooden handle." (Doc. 229 at p. 1). These items were located following a search of Michael Sierra, Sr.'s[2] property which consists of approximately 600 acres. Jesse Sierra argues that Mike Sierra did not consent to the search of the property. (Id. at p. 8). Jesse Sierra further argues that he had a reasonable expectation of privacy in the 600 acres, and therefore has standing to challenge the search, because he was invited there and was a member of the corporation who managed the garden. (Id. at p. 9). Jesse Sierra additionally argues that while the search warrant particularly describes a camper located on Mike Sierra's property that was to be searched, the warrant lacked particularity as to searching the rest of Mike Sierra's property for evidence of signs of digging, a gravesite or metal garden tool with wooden handle. (Id. at p. 15). Finally, Jesse Sierra argues that the United States v. Leon good faith exception does not apply because five days prior, Mike Sierra informed two tribal officers that they would need a federal warrant to search his property; the search team exceeded the scope of the warrant; and reasonably well-trained officers would have known that the search beyond the parameters of the particularized warrant was illegal. (Id. at pp. 8, 16).

---

[2] Michael Sierra, Sr. is the father of both Defendants. (Doc. 250 at pp. 144, 155-156). Hereinafter he will be referred to as "Mike Sierra."

The government opposes the motion arguing that Jesse Sierra lacks standing to challenge the search because he did not have a legitimate expectation of privacy in the area that was searched; to-wit: an open field well away from any areas that could be considered intimately associated with the activities of the home or within the curtilage of the home. (Doc. 236 at pp. 4-7).

At the outset of the evidentiary hearing, the court asked the parties to focus the evidence to the issues that were raised in the pre-hearing briefing: 1) whether the Defendants had standing to challenge the search; 2) whether the search exceeded the scope of the search warrant; and 3) whether an exception, such as the open fields doctrine applied. (Doc. 250 at pp. 7-8). During the evidentiary hearing, it became apparent that the parties approached presenting evidence in differing legal frameworks. The government's evidence, in part, presented evidence to support that the search warrant was valid because the entirety of the search warrant packet (warrant, application, affidavit, and attachments) described the location to be searched. In contrast, the Defendants approached the hearing from a legal framework that the court could only consider the four corners of the search warrant to determine the scope of the search. (Doc. 250 at pp. 127-128). Since the single page of the search warrant did not describe the gravesite, Defendants approached the hearing as if this was essentially a warrantless search. (Id.). The court took a recess during the hearing to have the parties conduct additional research, so that the evidence presented could be more narrowly tailored to the legal issues in dispute. Upon resuming the hearing, the court indicated that it would

decide the issue as to whether the search warrant was sufficiently particular and whether the search was conducted pursuant to the scope of the warrant. If the court upheld the search on this basis, no additional testimony would be taken. If the court found the search was unconstitutional on its face and Leon did not apply, then additional testimony would be taken as to the issues of standing and expectation of privacy/open fields.

## FACTS

In July of 2019, BIA Agent Molanna Clifford was investigating the disappearance of Esther Wolfe. (Id. at p. 11). On July 25, 2019, Agent Clifford presented an application for a search warrant, an affidavit in support of the application, Attachment A, and the search warrant to a United States Magistrate Judge.[3] (Id. at pp. 12-16). Agent Clifford testified that an Assistant United States Attorney assisted her with preparing the search warrant. (Id. at pp. 11, 15). This "packet" of documents is located at Exhibit 42.

The affidavit sets forth a thirteen-page summary of the investigation into the disappearance and sexual assault of Esther Wolfe. The affidavit described Ms. Wolfe's seven-day abduction commencing on July 13, 2019, until her release on July 21, 2019. (Ex. 42). The affidavit set forth numerous locations and property where various criminal activity occurred during the weeklong ordeal including a blue Chevrolet Avalanche, Dustin Sierra's residence, a

---

[3] Magistrate judges may properly issue report and recommendations regarding search warrants they previously authorized. See United States v. Campbell, No. 12-CR-40039-KES, 2012 WL 6042757 (D.S.D. Dec. 5, 2012) (adopting R&R of magistrate judge who also issued search warrant challenged in suppression motion).

5

camper on Mike Sierra's property, a shallow grave on Mike Sierra's property, a blue abandoned house near Louella Youngman's residence, and a motel room in Crawford, Nebraska.  (Id. at Bates 0792-0794).

The caption of the search warrant application, the caption of the affidavit, and the caption of the search warrant all read as follows:

> IN THE MATTER OF THE SEARCH OF: The residence of Dustin Sierra, 430 BIA 35, Oglala, SD 57770; a blue Chevrolet Avalanche, VIN 3GNEK12A16G165262, registered to Robert Little; an abandoned blue building on the property of Louella Youngman in the Number Four housing area near Pine Ridge, SD; **a property described as a camper located at the residence belonging to Mike Sierra, on Bettelyoun Rd. Rt. 94, in Oglala, SD**; and the person or body of Jesse Sierra to consist of buccal swabs.

(Id. at Bates 0785, 0786, 0801) (emphasis added).

The application for the search warrant stated that Agent Clifford "…ha[s] reason to believe that on the following person or property (*identify the person or describe the property to be searched and give its location*):  See Attachment A. located in the District of South Dakota, there is now concealed (*identify the person or describe the property to be seized*): See Attachment A."

(Id. at Bates 0785).  In Attachment A, it lists several items to be seized including the following:

> 2. Christmas lights and the victim's discarded clothing to include shoes and a blue work smock at the camper located at the residence of Mike Sierra.
> 3. Evidence of a shallow grave near the garden at the residence of Mike Sierra in Oglala, SD, to include any shovels or items used to dig the shallow grave.

(Id. at Bates 0799).

6

After placing Agent Clifford under oath, the magistrate judge found probable cause to authorize the search, and signed and dated the application, the affidavit, and the search warrant. (Id. at Bates 0785-0801). The search warrant did not identify or incorporate Attachment A. However, the warrant referenced the affidavit in support of the search warrant and incorporated it by reference. In turn, the affidavit describes the following property to be searched:

> 42. Based on the foregoing, I submit there is probable cause to believe that evidence of a crime may be found in a camper on the property of Mike Sierra on Bettelyoun Rd near Route 94 in Oglala, SD. I submit there is probable cause to believe that evidence of Aggravated Sexual Assault by Force, in violation of 18 U.S.C. §§ 2241(a)(1) and 1153, Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6) and 1153, and Assault by Strangulation of a Dating Partner, in violation of 18 U.S.C. §§ 113(a)(8) and 1153, has occurred and I request a search warrant be issued authorizing the search and seizure of items in Attachment A.

(Id. at Bates 0797-0798).

The relevant potions of Attachment A are set forth above. The search warrant packet was presented, signed and executed on July 25, 2019. Agent Clifford testified that based on her knowledge, training, and experience the attachments are part and parcel of the search warrant. (Doc. 250 at pp. 19, 70-71).

Later that day, Agent Clifford and the search team met in Oglala, South Dakota in a church parking lot off Highway 18. (Id. at p. 22). FBI Special Agent Stephen Beery briefed the search team and presented the entire packet of documents containing the search warrant, application, affidavit and Attachment A. (Id. at pp. 23, 75-76). Agent Beery testified that during the

7

briefing, he went over safety protocols, their deadly force policy, some specific details of what exactly they were looking for, where they were going, each member of the search team's responsibility and the subjects of the search warrant. Agent Beery told the search team that they had the authority to search and look for all of the items that were listed in Attachment A. (Id. at p. 125). The search warrant packet was made available to each of the members of the search warrant team. (Id. at pp. 76, 119). The search warrant packet accompanied members of the search team to each location they searched. (Id.). The court finds that Agent Beery's testimony is credible.

The search team first went to Dustin Sierra's residence around 3:30 p.m., and then proceeded to Mike Sierra's residence arriving at approximately 5:30 p.m. (Id. at pp. 23-24, 40-41). When the search team arrived at Mike Sierra's residence, Agent Beery explained to Mike Sierra why they were there and what they were looking for, which included a conversation about the search warrant packet. (Id. at p. 77). Agent Beery testified that he gave a copy of the warrant to Mike Sierra. (Id. at p. 108). Although he could not recall specifically, Agent Beery testified that he gave more than the single page of the warrant to Mike Sierra, as it is his practice to leave attachments. (Id. at p. 109).

Mike Sierra testified that Agent Beery only gave him the single page of the search warrant. (Id. at pp. 144-145). This document would be Exhibit 42, Bates 0801. He denied that a packet of documents was given to him. (Doc. 250 at p. 145). The court had an opportunity to observe Mike Sierra's

demeanor and responsiveness to questioning and finds him not credible. In addition to the apparent bias in favor of his sons, Mike Sierra testified to things that were simply not credible. For example, when asked if he was aware that the agents found Christmas lights and the garden tool on his property, he responded, "I had Christmas lights all over that place out there." (Id. at p. 148). One only need review Exhibits 1-30 which shows expansive open fields and no sources of power to conclude that Mike Sierra's testimony is untruthful and an effort to explain away what could be construed as damaging evidence in his sons' case. On another occasion when asked how far it is from his house to the camper, he replied "according to the FBI, it took them 13 minutes to get down there." (Id. at p. 147). When questioned how he was aware of this specific information contained in the 302 report, he denied reviewing his sons' discovery and gave evasive answers about hearing it from "talking to different people." (Id. at p. 153). Finally, Mike Sierra testified that Jesse Sierra and Dustin Sierra[4] had never used alcohol or drugs. (Id. at p. 161). At least as it pertains to Jesse Sierra, the court knows this to be untrue, given Jesse Sierra's prior criminal history. (See Doc. 16). For all these reasons, the court finds Mike Sierra not credible and places little to no weight on his testimony.

Mike Sierra's property consists of approximately 600 acres of contiguous land. (Doc. 250 at pp. 120, 146). It is located in a remote area of the Pine

---

[4] Although the transcript does not specifically identify Jesse and Dustin, the court recalls with particularity that Mike Sierra nodded his head towards the Defendants who were present in the courtroom, thus identifying "these boys" as Jesse Sierra and Dustin Sierra.

9

Ridge Indian Reservation. (Id. at pp. 104-105, 143). There is what the parties referred to as a "straw bale house," which is where Mike Sierra resides. The camper, described in the warrant, was located in excess of 3,500 feet away from the straw bale house. (Ex. 43-44).

Shortly after arriving on the property, Agent Clifford called Esther Wolfe to get a better idea of where the garden area with the shallow grave was located.[5] (Id. at pp. 41, 50). Agent Clifford relayed the information concerning the direction of the shallow grave to Agent Beery.

After the initial meeting with Mike Sierra, the agents started to branch out into their own roles to conduct the various searches. Three agents, along with Mike Sierra, went to the location of the camper. Agent Clifford testified that Mike Sierra offered to show her and two of the agents where the camper was located, and the foursome departed in the direction of the camper. (Id. at pp. 44, 147).

Agent Beery and other members of the search team took off in a westerly direction from Mike Sierra's house into an open field in search of the "gravesite." (Id. at p. 78). As it turned out, the "gravesite" was located nowhere near the camper. (Id. at p. 64). In fact, it was over 1,000 feet from the straw bale house, in the opposite direction of where the camper was located. (Ex. 43). The search near the "gravesite" revealed a garden tool, Christmas lights,

---

[5] Agent Clifford contacted Esther Wolfe approximately six or seven times throughout the day while they performed searches at the various locations. The information Esther provided regarding where items were located was generally accurate. (Id. at p. 63).

and disturbed areas of dirt. (Id. at pp. 84-87). This evidence is the subject of the motion to suppress. At the conclusion of the search, Mike Sierra was provided a property receipt documenting what items were seized from his property. (Id. at p. 148).

Agent Clifford testified that she believed that she had authority to search the property because she had a federal search warrant. It was Agent Clifford's understanding that the warrant gave her access to go wherever she needed to go on Mike Sierra's land. (Id. at pp. 26, 54, 59). Agent Beery testified that he limited his search to everything in the warrant and the attachment that accompanied it, and that he believed everything that they searched and seized was covered by the warrant. (Id. at pp. 101, 110). Similarly, Officer Amber Twiss testified that she believed that she had authority to look for everything listed in Attachment A. (Id at p. 124).

In post hearing briefing, Defendants argue that the first section of the warrant, which identifies the person or property to be searched and its location, lacks particularity in that it fails to particularly describe the entire property of Michael Sierra for a search of where a dig site might be found. Defendants argue that nothing about the grounds of Mike Sierra are referenced in the first section of the warrant. (Doc. 259 at pp. 3, 7). Defendants also argue that the warrant fails to incorporate by reference Attachment A. The United States opposes the motion. (Doc. 258).

## DISCUSSION

### I. Search Warrant Particularity and Incorporation

The Warrant Clause of the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "Particularity prohibits the government from conducting 'general, exploratory rummaging of a person's belongings.'" United States v. Sigillito, 759 F.3d 913, 923 (8th Cir. 2014) (quoting United States v. Saunders, 957 F.2d 1488, 1491 (8th Cir. 1992)). "To satisfy the particularity requirement of the Fourth Amendment, the warrant must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." United States v. Summage, 481 F.3d 1075, 1079 (8th Cir. 2007) (internal quotation omitted); see Groh v. Ramirez, 540 U.S. 551, 559–63, 561 n.4 (2004) (holding that search was illegal because warrant provided no particularity, did not incorporate affidavit, and affidavit did not accompany the warrant, there could "be no written assurance that the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit.").

### A. The incorporation requirement

The Eighth Circuit has recognized that a warrant which does not on its face identify items to be seized may nevertheless satisfy the particularity requirement by incorporating a supporting document. See, e.g., United States v. Hamilton, 591 F.3d 1017, 1024 (8th Cir. 2010). A warrant will be read to

12

incorporate an affidavit "if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." Groh, 540 U.S. at 557–58; see United States v. Curry, 911 F.2d 72, 77 (8th Cir. 1990) ("[A] description in the supporting affidavit can supply the requisite particularity if 'a) the affidavit accompanies the warrant, and b) the warrant uses suitable words of reference which incorporate the affidavit therein.'" (quoting United States v. Strand, 761 F.2d 449, 453 (8th Cir. 1985))).

In Groh, the Supreme Court found the search warrant at issue violated the Fourth Amendment because "the warrant did not incorporate other documents by reference, nor did either the affidavit or the application (which had been placed under seal) accompany the warrant." Groh, 540 U.S. at 558. Significantly, the Court stated "[t]he mere fact that the Magistrate issued a warrant does not necessarily establish that he agreed that the scope of the search should be as broad as the affiant's request. Even though petitioner acted with restraint in conducting the search, 'the inescapable fact is that this restraint was imposed by the agents themselves, not by a judicial officer.'" Id. at 561 (citing Katz v. United States, 389 U.S. 347, 356 (1967)).

However, "[n]ot every Fourth Amendment violation results in exclusion of the evidence obtained pursuant to a defective search warrant." Hamilton, 591 F.3d at 1027. "Because the purpose of the exclusionary rule is to safeguard Fourth Amendment rights generally through its deterrent effect, it applies only where it results in appreciable deterrence." United States v. Szczerba, 897 F.3d 929, 937 (8th Cir. 2018) (internal citations and quotations omitted);

United States v. Leon, 468 U.S. 897, 909 (1984) (establishing good faith exception to exclusionary rule). "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." Davis v. United States, 564 U.S. 229, 237 (2011).

"When law enforcement officers 'exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs.'" Szczerba, 897 F.3d at 938 (quoting Davis, 564 U.S. at 238) (additional quotations omitted). "But 'when police mistakes are the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not pay its way.'" Id. (quoting Herring v. United States, 555 U.S. 135, 144 (2009)) (additional quotations and alterations omitted). Suppression remains an appropriate remedy if, "depending on the circumstances of the particular case, a warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." Leon, 468 U.S. at 923.

The Eighth Circuit recently applied Groh to a search warrant involving facts similar to this case. Szczerba, 897 F.3d 929. There, the warrant neither listed items to be seized nor used any incorporating language referencing the affidavit. Id. at 937. The Eighth Circuit found that for those reasons it lacked particularity. Further, the warrant did not incorporate the affidavit by merely

14

mentioning it in the warrant's averment of probable cause. Id. (citing Groh, 540 U.S. at 555, 558; Strand, 761 F.2d at 453; Curry, 911 F.2d at 77).

However, the court found that suppression was not appropriate because "the warrant was not so obviously deficient that any reasonable officer would have known that it was constitutionally fatal." Id. at 938. Significantly, the warrant "clearly and immediately presented to the reader's eye" the two locations to be searched, which were the subject of the affidavit. Id. (internal quotations omitted). The warrant also specifically referred to the affidavit, which clearly described the locations to be searched and the items to be seized. Id. The issuing judge signed the supporting affidavit, and the affiant brought the affidavit and the warrant with her to supervise the search. Id. at 939. "That the affidavit was signed by the issuing judge and that it accompanied the warrant" distinguished Szczerba from Groh. Id. Further, application of the exclusionary rule would not result in any appreciable deterrence of police misconduct. Id. While the affiant acted negligently in drafting the warrant, she conducted the search in accordance with the Fourth Amendment by concealing no facts from the judge and carefully securing the warrant. Id.

### B. Suppression is not appropriate

Szczerba controls this case. The search warrant in this case lacked particularity in that it did not incorporate the affidavit or Attachment A by reference in the first section which identifies the person or property to be searched. It merely referenced "a property described as a camper located at the residence belonging to Mike Sierra, on Bettelyoun [Rd]., Rt. 94, in Oglala, SD."

Of significance, though, is the second section finding probable cause to search the property as outlined in the affidavit that was incorporated by reference.[6] Therefore, suppression is not appropriate.

This case presents a more compliant search warrant than in Szczerba. Here, the warrant describes the place to be searched as the camper located at Mike Sierra's residence; albeit, it fails to describe the garden area to be searched. Defendant Jesse Sierra concedes that if the warrant would have referred to Attachment A in the first section of the search warrant, the particularity requirement would be met. (Doc. 259 at p. 7). It strains to reason that if Attachment A was inserted in the first section, as opposed to the second section by reference to the affidavit as was done here, the first scenario is constitutional, while the second is unconstitutional. While this factor presents a close call, the remaining factors of Szczerba weigh heavily in favor of upholding the validity of the search. First, the search warrant referred to and incorporated the affidavit, which clearly described in six numbered paragraphs the places to be searched and items to be seized, along with eight numbered paragraphs in Attachment A. (Ex. 42 at Bates 0796-0799). Second, the issuing magistrate judge signed the application, affidavit, and search warrant, which Agent Clifford presented in a packet. The court therefore has written

---

[6] The court finds Defendant Jesse Sierra's argument that the warrant lacks particularity because it failed to incorporate by reference Attachment A, without merit. The warrant incorporates the affidavit by reference and the affidavit repeatedly refers to Attachment A requesting that the court issue a search warrant for the items in Attachment A. The warrant incorporates by reference the affidavit, of which Attachment A is an integral part. Therefore, by extension, Attachment A is incorporated into the warrant.

assurance that "the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit." Groh, 540 U.S. at 560. And third, the court finds that law enforcement brought the affidavit, Attachment A, and the search warrant to supervise the search. This case therefore is distinguishable from Groh. Szczerba, 897 F.3d at 939.

Like in Szczerba, application of the exclusionary rule here would not result in appreciable deterrence of police misconduct. Id; Leon, 468 U.S. at 909. Law enforcement acted negligently by failing to incorporate the affidavit and attachments in the first section of the search warrant. However, the search team's actions were objectively reasonable in believing the warrant, bundled together with the carefully constructed supporting documents and authorized by a neutral magistrate judge, authorized the seizure of the items removed from Mike Sierra's residence on July 25, 2019. See Hamilton, 591 F.3d at 1030. The search team "with full knowledge of the items authorized to be seized, carefully executed the warrant, seizing only those items included in the list of items in the affidavit." Id. at 1029. Agent Clifford adhered to the requirements of the Fourth Amendment by presenting a detailed application to the magistrate judge and concealing no facts in the application. (Doc. 250 at pp. 16-17, 22); see Szczerba, 897 F.3d at 939. The facts of this case "certainly did not reflect the type of deliberate, reckless, or grossly negligent disregard for the Fourth Amendment that the exclusionary rule can effectively deter." Szczerba, 897 F.3d at 939. Under these facts, the court finds the warrant was

not "so obviously deficient" that no reasonable officer would presume it valid. Groh, 540 U.S. at 558.

Therefore, suppression of the evidence obtained through the search of Mike Sierra's property, including evidence of a shallow grave, digging tools and Christmas lights, which was specifically listed in Attachment A, is not warranted in this case.

## CONCLUSION

For the aforementioned reasons, it is respectfully recommended that the Motion to Suppress be denied, consistent with the above analysis.

Alternatively, should the court not adopt this report and recommendation, it is recommended that the court permit a second evidentiary hearing take place before this magistrate judge to complete the record as to the remaining issues of standing and whether Defendants had a reasonable expectation of privacy on Mike Sierra's property.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 11th day of March, 2022.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge