UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    vs.<br><br>JESSE SIERRA, a/k/a Jesse Sierro, and DUSTIN SIERRA, a/k/a Dustin Sierro,<br><br>            Defendants. | 5:19-CR-50110-KES<br><br>ORDER ADOPTING REPORT AND RECOMMENDATIONS AS MODIFIED AND DENYING MOTION TO SUPPRESS |

      Defendant Jesse Sierra is charged in a Superseding Indictment with Kidnapping in violation of 18 U.S.C. §§ 1201, 1153, and 2; Aggravated Sexual Abuse by Force, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(A), and 1153; Aggravated Sexual Abuse by Force, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(B), and 1153; Interstate Domestic Violence, in violation of 18 U.S.C. §§ 2261(a)(2) and 2; Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6), 1153 and 2; Assault by Strangulation of a Dating Partner, in violation of 18 U.S.C. §§ 113(a)(8), 1153 and 2; Kidnapping in violation of 18 U.S.C. §§ 1201 and 1153; Aggravated Sexual Abuse by Force, in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2)(B) and 1153; Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6) and 1153; Interstate Domestic Violence, in violation of 18 U.S.C. §§ 2261(a)(2); and Assault by Strangulation of a Dating Partner, in violation of 18 U.S.C. §§ 113(a)(8) and 1153. Docket 201. Defendant Dustin Sierra is charged in a Superseding Indictment with Kidnapping in violation of 18 U.S.C. §§ 1201, 1153, and 2;

Interstate Domestic Violence, in violation of 18 U.S.C. §§ 2261(a)(2) and 2; Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. §§ 113(a)(6) 1153 and 2; and Assault by Strangulation of a Dating Partner, in violation of 18 U.S.C. §§ 113(a)(8), 1153 and 2. *Id.*

Jesse moves to suppress evidence that was seized by law enforcement on July 25, 2019, under a search and seizure warrant that was executed at the residence and grounds of Michael Sierra, Sr.[1] Docket 228 at 1. Dustin joins in the motion to suppress. Docket 225. Specifically, Jesse seeks to suppress photographs of "signs of digging" or a "gravesite," Christmas lights, and a metal garden tool with wooden handle. Docket 228 at 1. Jesse alleges the search team exceeded the scope of the warrant when the team seized evidence from the shallow grave because the warrant lacked particularity as to searching Mike Sierra's property for the location of a shallow grave. *Id.* at 15-16.

The court referred Jesse's motion to Magistrate Judge Daneta Wollmann under 28 U.S.C. § 636(b)(1)(B). During an evidentiary hearing, Magistrate Judge Wollmann narrowed the issues for the parties to the issue of whether the search warrant authorized the seizure of items listed in Attachment A. Docket 250 at 135-36.[2] After holding an evidentiary hearing, Magistrate Judge

---

[1] Michael Sierra, Sr. is the father of both defendants. Docket 250 at 144, 155-56. He will be referred to as Mike Sierra.

[2] Magistrate Judge Wollmann held that if the court found the search warrant did not authorize the search of locations in Attachment A, then additional testimony should be taken at a second evidentiary hearing to complete the record as to the issue of standing. Docket 250 at 135-36. From the record, the fact that the shallow grave was found in an area of trees roughly 1,000 feet from Mike Sierra's straw bale house may indicate that neither defendant has standing to seek suppression of the evidence seized from the shallow grave.

2

Wollmann recommended Jesse's motion to suppress be denied. Dockets 242, 264. Jesse filed objections to the Report and Recommendation. Docket 266. Dustin joins in Jesse's objections to the Report and Recommendation. Docket 267. After a de novo review of the Report and Recommendation and a review of the record, the court adopts the Report and Recommendation as modified below and denies Jesse and Dustin's motion to suppress.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTS

A full recitation of the facts can be found in the Report and

---

Docket 246 at 40. Further fact-finding at an additional evidentiary hearing would be necessary to determine the issue of standing.

3

Recommendation. Docket 264. Jesse does not explicitly object to the Report and Recommendation's statement of the facts, and the United States did not file any objections. The court has conducted a de novo review of the evidence and incorporates herein the facts as set forth in Magistrate Judge Wollmann's Report and Recommendation.

## DISCUSSION

Jesse makes two objections to Magistrate Judge Wollmann's Report and Recommendation related to his rights under the Fourth Amendment. Docket 266. First, Jesse objects to Magistrate Judge Wollmann's finding that although the search warrant lacked particularity, suppression was not appropriate because the second section of the warrant incorporated the affidavit—and by extension, Attachment A—by reference. *Id.* at 1-2. Second, Jesse objects to Magistrate Judge Wollmann's finding that the good-faith exception to the exclusionary rule applied to the search warrant. *Id.* at 2-3. The court will address each objection in turn.

**I.      Whether the Search Warrant Lacks Particularity**

The Report and Recommendation concludes that the search warrant "lacked particularity in that it did not incorporate the affidavit or Attachment A by reference in the first section which identifies the person or property to be searched." Docket 264 at 15. Jesse agrees with this conclusion. Docket 266 at 1. After a de novo review of the record, the court agrees and adopts this portion of the Report and Recommendation.

Jesse objects to Magistrate Judge Wollmann's finding that suppression

4

was not appropriate because the second section of the warrant finding probable cause to search the property as outlined in the affidavit, was incorporated by reference.[3] Docket 264 at 16. Jesse argues that the warrant lacks particularity because (1) the warrant "fails to describe the garden area to be searched," and (2) the description of the shallow grave's location is insufficiently particular. Docket 266 at 5-7.

### A. Are the Affidavit and Attachment "A" Incorporated into the Search Warrant?

The Warrant Clause of the Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Eighth Circuit has recognized that the Fourth Amendment's particularity requirement can be satisfied by including the items to be seized in the warrant or in an incorporated document. *See, e.g., United States v. Hamilton*, 591 F.3d 1017, 1024 (8th Cir. 2010). A warrant will be read to incorporate an affidavit "if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004); *see United States v. Curry*, 911 F.2d 72, 77 (8th Cir. 1990) ("[A] description in the supporting affidavit can supply the requisite particularity if 'a) the affidavit accompanies the warrant, and b) the warrant uses suitable

---

[3] Magistrate Judge Wollmann concluded that because the search warrant incorporated the affidavit by reference and the affidavit repeatedly referred to Attachment A, by extension, Attachment A was incorporated into the warrant. Docket 264 at 16.

words of reference which incorporate the affidavit therein.' " (quoting *United States v. Strand*, 761 F.2d 449, 453 (8th Cir. 1985))). Further, the Eighth Circuit has determined that an attachment renders a warrant sufficiently particular if the attachment is present at the execution of the search, regardless of whether the searching officers provide the attachment to the defendant prior to the search. *United States v. Riesselman*, 646 F.3d 1072, 1077-78 (8th Cir. 2011).

    In this instance, the second section of the search warrant finding probable cause incorporates the affidavit by reference, and through the affidavit's repeated reference to Attachment A, incorporates Attachment A. The incorporating language in the search warrant that states "as outline[d] in the affidavit in support of the search warrant, which is incorporated herein by this reference" is distinguishable from the warrant in *Groh*, 540 U.S. at 558, where the warrant erroneously described the items to be seized as a blue dwelling and did not incorporate the affidavit that contained a list of items. Docket 246 at 58. Additionally, according to FBI Agent Beery's testimony, the search team was briefed and presented with the entire packet of documents containing the search warrant, application, affidavit, and Attachment A. Docket 250 at 75-76, 119. Agent Beery further testified that this packet of documents also accompanied members of the search team to each searched location. *Id.* at 76, 119. The incorporating language in the warrant and the availability of the warrant packet, including Attachment A, for members of the search team on Mike Sierra's property, satisfies the particularity requirement of the Fourth

Amendment.

Thus, this court agrees with Magistrate Judge Wollmann's conclusion that the affidavit and Attachment A are incorporated into the search warrant by reference.

### B. Was the Description of the Location of the "Shallow Grave" Sufficiently Particular?

Jesse argues that even if the warrant incorporates Attachment A, the warrant still lacks particularity because the item listed in "Items to be Seized" on Attachment A of "[e]vidence of a shallow grave near the garden at the residence of Mike Sierra in Oglala, SD, to include any shovels or items used to dig the shallow grave," fails to sufficiently describe the place to be searched. Docket 266 at 2, 5; Docket 246 at 56. Specifically, Jesse contends that the location of the "shallow grave," discovered by the search team roughly 3,500 feet away from the garden on Mike Sierra's property, demonstrates the insufficiency of the description in Attachment A to satisfy the particularity requirement. Docket 266 at 5-7; *See* Docket 246 at 40-41.

Jesse relies upon *United States v. Gitcho* to argue that the description of the location of the shallow grave is insufficiently particular. 601 F.2d 369 (8th Cir. 1979). The *Gitcho* two-part test provides that "the sufficiency of the description of a place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." *Gitcho*, 601 F.2d at 371. "The particularity requirement 'is a

7

standard of "practical accuracy" rather than a hypertechnical one.' " *United States v. Thurman*, 625 F.3d 1053, 1057 (8th Cir. 2010) (quoting *United States v. Peters*, 92 F.3d 768, 769-70 (8th Cir. 1996)). The "total circumstances surrounding the case" are considered when determining whether a warrant fails for particularity. *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (quoting *Milliman v. Minnesota*, 774 F.2d 247, 250 (8th Cir. 1985)).

Jesse argues that the warrant fails both prongs of the *Gitcho* test. Docket 266 at 5-7. First, Jesse contends that the warrant fails the first prong because the team had to call the alleged victim to determine where to find the shallow grave and as a result, reasonable effort was not sufficient to enable the officers to locate the premises. *Id.* at 5. Jesse further argues that the team engaged in an exploratory search of Mike Sierra's property that would have been unnecessary if the description of the location was sufficiently particular. *Id.* at 6. Second, Jesse argues that there was a high chance of a mistaken search on Mike Sierra's nearly 600-acre property because the officers did not know the precise location of the shallow grave, and because the testifying officers believed they could search and seize everything listed in the warrant and in Attachment A. *Id.* at 6-7.

Jesse's case is distinguishable from *Gitcho*. There, the search warrant at issue contained an incorrect address for an unmarked building on an unmarked street to be searched. *Gitcho*, 601 F.2d at 371. The Court held that although the listed address was technically incorrect, the warrant was valid because the listed address was "reasonable for the location intended." *Id.* at

8

372. The Court reasoned that because the address did not exist, the chance of a mistaken search of the wrong premises was unlikely. *Id.* Further, the executing officers had prior personal knowledge of which premises was intended to be searched based on previous surveillance of the premises and the premises that was intended to be searched was the one searched. *Id.*

Here, the address of Mike Sierra's property was accurate, but the description of the location of the shallow grave on Mike Sierra's property was inaccurate. The shallow grave was actually found approximately a mile away from the garden. *See* Docket 246 at 40-41. Unlike the executing officers in *Gitcho*, the search team did not have prior personal knowledge regarding where the shallow grave was located on Mike Sierra's property. While Agent Clifford testified that she previously had been to Mike Sierra's property and had a general idea of where the camper was located, Agent Clifford did not have a similar experience for the shallow grave. Docket 250 at 46.

The fact that the shallow grave was found roughly a mile away from where the garden was located indicates that if the executing officers relied solely upon the description in Attachment A, the officers would not have been able to locate the shallow grave without engaging in a general exploratory search on Mike Sierra's property. Instead, not knowing where the shallow grave was located, Agent Clifford called the victim to gain better information on which direction the executing officers should go in their search for the shallow grave. Docket 250 at 25-26. While calling the victim for more accurate information mitigated the chances of a mistaken search, based on the description of the

9

shallow grave's location in Attachment A, the search team's actions were not confined by the description of the location in Attachment A, but rather, by the additional information provided by the victim. Officers expending reasonable effort to locate the shallow grave on Mike Sierra's property based solely upon the location's description in Attachment A would have limited their search to the garden area. Because the executing officers did not have a warrant that authorized a search of Mike Sierra's entire property, the inaccurate description of the shallow grave's location in Attachment A raises a reasonable probability of a mistaken search. *See* Docket 246 at 56, 58. Thus, based on the insufficiency of the description of the shallow grave's location in Attachment A, the court concludes that the search warrant lacks particularity.

II.   **Whether the Good-Faith Exception to the Exclusionary Rule Applies to the Search Warrant**

Jesse objects to Magistrate Wollmann's conclusion that the good-faith exception to the exclusionary rule applies to the search for the shallow grave on Mike Sierra's property. Docket 266 at 2. Specifically, Jesse argues that because the "location of the garden area was not particularized in the warrant and certainly not in Attachment 'A,' " the seven-member search team's "exploratory general search" for the shallow grave was not objectively reasonable. *Id.*

"Under the good faith exception, evidence seized pursuant to a search warrant later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015) (citing *United States v. Proell*,

485 F.3d 427, 430 (8th Cir. 2007)). This objective inquiry is confined to "whether a reasonably well[-]trained officer would have known that the search was illegal despite a judge's issuance of the warrant." *Id.* (citing *Proell*, 485 F.3d at 430). When assessing an officer's good faith reliance on a search warrant, the Eighth Circuit has considered "the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Proell*, 485 F.3d at 431 (quoting *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001)). "These circumstances frequently include a particular officer's knowledge and experience . . . but not [the officer's] subjective intent." *Herring v. United States*, 555 U.S. 135, 145-46 (2009) (citing *Ornelas v. United States*, 517 U.S. 690, 699-700 (1996); *Whren v. United States*, 517 U.S. 806, 812-13 (1996)).

> The good-faith exception does not apply in four instances:
>
> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;
>
> (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant;
>
> (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and
>
> (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Jackson*, 784 F.3d at 1231 (quoting *Proell*, 485 F.3d at 431).

Jesse does not allege any of the first three instances. Instead, Jesse argues, under the fourth section, that the search team's actions were not

11

objectively reasonable because the "warrant was woefully deficient with respect to identifying a location of the 'dig site.' " Docket 266 at 7. Jesse argues that the officers exceeded the scope of the warrant when members of the search team "searched in a remote location deliberately disregarding the area of the garden where they had suggested probable cause existed." *Id.* at 8.

Jesse's case is akin to *United States v. Szczerba*, 897 F.3d 929 (8th Cir. 2018). In *Szczerba*, the Eighth Circuit found that the good-faith exception may still apply even though the warrant lacked particularity because it did not list items to be seized or use any incorporating language that referenced the affidavit. *Id.* at 936, 938. The Court held that suppression was not appropriate because "the warrant was not so obviously deficient that any reasonable officer would have known that it was constitutionally fatal." *Id.* at 938. The Court noted that the warrant clearly identified the two locations to be searched, the warrant referred to the affidavit in its averment of probable cause, the issuing judge signed the supporting affidavit, and the affiant brought the affidavit and the warrant to supervise the search. *Id.* at 938-39. Further, the Court concluded that the officers reasonably relied upon the warrant and application of the exclusionary rule would not result in any appreciable deterrence of police misconduct. *Id.* at 939.

In similar fashion, the officers searching Mike Sierra's property reasonably relied upon the search warrant and the *Szczerba* factors weigh in favor of applying the good-faith exception. Most of the factors in *Szczerba* are present here: the search warrant referenced and incorporated the affidavit, and

12

by extension, Attachment A, in its averment for probable cause; the issuing magistrate judge signed the application, affidavit, and search warrant; and the executing officers made available and brought the search warrant, affidavit, and Attachment A to supervise the search on Mike Sierra's property. Docket 246 at 42, 55, 58; Docket 250 at 23, 75-76, 119. Further, the issuing magistrate judge's signature upon the warrant and affidavit provides written assurance that "the Magistrate actually found probable cause to search for, and to seize, every item mentioned in the affidavit." *Groh*, 540 U.S. at 560.

      While the present case is unlike *Szczerba* in that neither the warrant nor the incorporating documents correctly identify the precise location of the shallow grave, executing officers could reasonably rely upon the location description of a "shallow grave near the garden" as "reasonable for the location intended" because the description of the shallow grave's location likely could not be more specified given the rural nature of Mike Sierra's property and the statement that was provided by the victim to Agent Clifford. Docket 246 at 56; *Gitcho*, 601 F.2d at 372. Instead, relying upon the magistrate judge's authorization to search and seize evidence of a shallow grave on Mike Sierra's nearly 600-acre property, Agent Clifford called the victim for additional directions to the shallow grave—a method Agent Clifford used at the previous search locations to locate items.[4] Docket 250 at 41-42, 50. Further, the

---

[4] Agent Clifford called the victim approximately six to seven times throughout the day while the executing officers searched various locations to gain more information regarding where items on the warrant and Attachment A were located. Docket 250 at 42.

premises intended to be searched, the shallow grave on Mike Sierra's property, was the area searched by the executing officers. Docket 228-1 at 8; Docket 246 at 56. Thus, with the presence of multiple factors from *Szczerba* in the present case, the court concludes that the good-faith exception applies because the warrant, bundled together with the affidavit and Attachment A, was not "so facially deficient" that the executing officers could not reasonably rely upon it to search and seize evidence of a shallow grave on Mike Sierra's property.

Further, like in *Szczerba*, application of the exclusionary rule here would not result in appreciable deterrence of police misconduct. *Szczerba*, 897 F.3d at 939. "Because the purpose of the exclusionary rule is to 'safeguard Fourth Amendment rights generally through its deterrent effect,' it 'applies only where it results in appreciable deterrence.' " *Id.* at 937 (citing *Herring*, 555 U.S. at 139-41). Because exclusion can result in "letting guilty and possibly dangerous defendants go free—something that 'offends basic concepts of the criminal justice system,' " the benefits of deterrence must outweigh the costs. *Herring*, 555 U.S. at 141 (quoting *United States v. Leon*, 468 U.S. 897, 908 (1984)). As such, "when law enforcement officers exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Szczerba*, 897 F.3d at 938 (cleaned up) (quoting *Davis v. United States*, 564 U.S. 229, 238 (2011)). "But 'when police mistakes are the result of negligence . . . rather than systematic error or reckless disregard of constitutional requirements, any marginal deterrence does not pay its way.' " *Id.* (additional quotations omitted)

14

(quoting *Herring*, 555 U.S. at 147-48).

While the court agrees with Magistrate Judge Wollmann's finding that law enforcement acted negligently by failing to incorporate the affidavit and attachment in the first section of the warrant, the executing officers' actions in their search for the shallow grave "did not reflect the type of deliberate, reckless, or grossly negligent disregard for the Fourth Amendment that the exclusionary rule can effectively deter." *Szczerba*, 897 F.3d at 939. Instead, the executing officers contacted the victim to get a better idea of where the shallow grave was located. Docket 250 at 41, 50. Further, the members of the search team "carefully executed the warrant" by seizing only those items included in the list of items in the incorporated document. Docket 228-1 at 8; *Hamilton*, 591 F.3d at 1029. Additionally, the benefits of deterrence through suppression of the evidence collected from the shallow grave on Mike Sierra's property would not "outweigh the resulting costs." *Szczerba*, 897 F.3d at 938 (quoting Davis, 564 U.S. at 238). Even if the warrant in this case failed to meet the particularity requirement, the search team's actions were objectively reasonable in believing that the warrant, packaged together with the affidavit and Attachment A, authorized the search and seizure of the items found at the shallow grave on Mike Sierra's property. Thus, the court overrules Jesse's objection that the search team's actions were not objectively reasonable and adopts Magistrate Judge Wollmann's conclusion that the good-faith exception applies.

**CONCLUSION**

The court adopts Magistrate Judge Wollmann's recommendation as modified and denies Jesse's motion to suppress. For the same reasons, Dustin's motion to suppress is denied. Thus, it is

ORDERED that Dustin Sierra's motions to join Jesse Sierra's motion to suppress (Docket 225), to join Jesse Sierra's reply (Docket 239), and to join Jesse Sierra's objections to the Report and Recommendation (Docket 267) are granted. It is further

ORDERED that the report and recommendation (Docket 264) denying Jesse Sierra and Dustin Sierra's motions to suppress is adopted as modified by this opinion. The motion to suppress (Docket 228) is denied.

Dated July 21, 2022.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE