UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JESSE SIERRA, a/k/a Jesse Sierro, and DUSTIN SIERRA, a/k/a Dustin Sierro,<br><br>Defendants. | 5:19-CR-50110-KES<br><br><br>ORDER DENYING MOTIONS FOR ARREST OF JUDGMENT AND NEW TRIAL, DENYING DUSTIN'S MOTION FOR ACQUITTAL, AND GRANTING IN PART AND DENYING IN PART JESSE'S MOTION FOR ACQUITTAL |

Defendants, Jesse Sierra and Dustin Sierra, were found guilty of one count of kidnapping and one count of interstate domestic violence. Docket 325. Jesse was also found guilty of two counts of aggravated sexual abuse by force, one count of assault resulting in serious bodily injury, and one count of assault by strangulation of a dating partner. *Id.* Dustin moves for a judgment of acquittal under Rule 29, a new trial under Rule 33, and arrest of judgment under Rule 34. Docket 336. Jesse moves for the same, and Dustin moves to join in Jesse's motion. Dockets 337, 338. The government opposes these motions and moves the court to require defendants to supplement their motions with citations to the trial record. Docket 339. Dustin ordered a transcript of the second day of trial, and he filed a supplement with citations to this transcript. Dockets 340, 345.

## BACKGROUND

In a superseding indictment,[1] a grand jury charged both defendants with Kidnapping in violation of 18 U.S.C. §§ 1201, 1153, and 2; Interstate Domestic Violence in violation of 18 U.S.C. §§ 2261(a)(2) and 2; Assault Resulting in Serious Bodily Injury in violation of 18 U.S.C. §§ 113(a)(6), 1153, and 2; and Assault by Strangulation of a Dating Partner in violation of 18 U.S.C. §§ 113(a)(8), 1153, and 2. Docket 201 at 1-3. Jesse was also charged with two counts of aggravated sexual abuse by force, in violation of 18 U.S.C. §§ 2241(a)(1) and 1153, one count specifically alleging a violation of § 2246(2)(A), and the other a violation of § 2246(2)(B). *Id.* at 2. A jury trial was held from October 24 – 28, 2022. Docket 318.

At the close of the government's case in chief, defendants each moved orally for a judgment of acquittal on all counts. The United States opposed the motions. The court denied Jesse's motion in full, and it denied Dustin's motion as to the kidnapping and interstate domestic violence counts. It granted Dustin's motion as to the assault resulting in bodily injury and assault by strangulation of a dating partner counts. The jury returned a verdict of guilty on the remaining counts. Docket 325.

---

[1] Jesse was also charged with five counts arising out of an incident that allegedly occurred in 2018. These counts were severed from the counts on which the defendants were tried in October 2022 under Federal Rule of Criminal Procedure 8(b). Docket 284. The 2018 counts remain pending against Jesse.

**DISCUSSION**

## I.   Motions to Arrest Judgment

### A. Legal Standard

Under Rule 34, "[u]pon the defendant's motion or on its own, the court must arrest judgment if the court does not have jurisdiction of the charged offense." Fed. R. Crim. P. 34(a). "[A] judgment can be arrested only on the basis of error appearing on the 'face of the record' and not on the basis of proof offered at trial." *United States v. Sisson*, 399 U.S. 267, 281 (1970). The record "include[s] 'no more than the indictment, the plea, the verdict . . . and the sentence.' " *Id.* at 281 n.10 (alteration in original) (quoting *United States v. Bradford*, 194 F.2d 197, 201 (2d Cir. 1952)). "[S]ubject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231 . . . [t]hat's the beginning and the end of the 'jurisdictional' inquiry." *United States v. White Horse*, 316 F.3d 769, 772 (8th Cir. 2003) (quoting *Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999)). Under 18 U.S.C. § 3231, "The district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States."

**B. Dustin's Motion to Arrest Judgment**

Dustin is correct that the charge of kidnapping required an interstate commerce allegation for the court to have jurisdiction.[2] Docket 336 at 5; *see* 18 U.S.C. 1201(a)(1) ("Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person . . . when-- the person is willfully transported in interstate or foreign commerce[.]"). This is exactly what is alleged in Count 1 of the superseding indictment: "Dustin Sierra . . . did unlawfully seize, confine, inveigle, decoy, kidnap, abduct, and carry away [EW] for ransom or reward or otherwise and, in committing and in furtherance of the commission of the offense, did willfully transport [EW] in interstate and foreign commerce[.]" Docket 201 at 1-2. The court thus had jurisdiction over this charge.

Dustin next argues that the court does not have jurisdiction over either the kidnapping charge or the interstate domestic violence charge because an indictment for aiding and abetting "must be accompanied by [an] indictment for [a] substantive offense[,]" and "[n]o substantive offense is alleged . . . under either count 1 or count 4 because both defendants are charged with aiding and abetting." Docket 336 at 5. The aiding and abetting statute, 18 U.S.C. § 2, "does not create a separate offense, it simply makes

---

[2] There are alternative ways under 18 U.S.C. § 1201(a) that the crime of kidnapping would come under the court's jurisdiction, but none of those are relevant here.

those who aid and abet in a crime punishable as principals." *United States v. McKnight*, 799 F.2d 443, 445 (8th Cir. 1986). Thus, whenever a violation of § 2 is alleged, "some other substantive crime must be described as well[,]"and aiding and abetting "is an alternative charge in every count, whether explicit or implicit[.]" *Id.*; *United States v. Pearson*, 667 F.2d 12, 14 (5th Cir. 1982) ("[T]he words 'aided and abetted each by the other' in [the] indictment were wholly extraneous and had no effect on the crime charged[.]").

As described above, count 1 alleges the substantive crime of kidnapping. Count 4 alleges the substantive crime of interstate domestic violence. *Compare* § 2261(a)(2), *with* Docket 201 at 2-3. Both counts also explicitly allege that defendants "aid[ed] and abet[ted] each other." But such explicit language is "wholly extraneous" and "had no effect on the crime charged." *Pearson*, 667 F.2d at 14; *McKnight*, 799 F.2d at 445. Thus, the explicit inclusion of this language did not deprive the court of jurisdiction. *Gregory v. United States*, 230 F.3d 1363, at *1 (Table) (8th Cir. 2000) (denying certificate of appealability on petitioner's argument that the court lacked jurisdiction because the indictment charged him and a co-defendant with "aiding and abetting each other."). Indeed, rather than deprive a court of jurisdiction, such language "reveals a basis for joinder on its face," allowing two defendants to be properly charged in the same indictment

under Rule 8(b). *United States v. Andrade*, 788 F.2d 521, 529 (8th Cir. 1986). Dustin's motion to arrest judgment is denied.

### C. Jesse's Motion to Arrest Judgment

Jesse argues that the court does not have jurisdiction over Count 3, which charged aggravated sexual abuse by force, because "the Government was required to show that the crime alleged occurred in Indian Country[,]" and "[t]he only evidence of oral sex" occurred in Crawford, Nebraska, which is not in Indian Country. Docket 337 at 27; *See* 18 U.S.C. § 2246(2)(B). But under Rule 34, the court does not consider the evidence at trial, only what is alleged in the indictment. *Sisson*, 399 U.S. at 281. Here, the indictment alleges that that act occurred "near Oglala and elsewhere, in Indian country, in the District of South Dakota." Docket 201 at 2. Thus, the court had jurisdiction, and Jesse's motion to arrest judgment is denied.

## II.    Jesse's Motion for New Trial

Jesse moves for a new trial on three grounds: (1) that the government suppressed exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (2) that the court erred in limiting his proposed "theory of the defense" instruction; and (3) that EW's lack of credibility, coupled with a lack of other evidence, preponderates heavily against the verdict.[3] *See* Docket 337.

---

[3] Because the third ground for a new trial argues that the evidence was insufficient, the court will consider this ground together with Jesse's motion for judgment of acquittal under Rule 29.

6

**A. Legal Standard**

Under Rule 33 of the Federal Rules of Criminal Procedure, a court can vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "As a general rule, the decision whether to grant or deny a motion for a new trial lies within the discretion of the district court." *United States v. McMahan*, 744 F.2d 647, 652 (8th Cir. 1984) (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)). In ruling on a motion for new trial, the court may weigh evidence and evaluate witness credibility. *United States v. Smart*, 501 F.3d 862, 865 (8th Cir. 2007) (citing *United States v. Hilliard*, 392 F.3d 981, 987 (8th Cir. 2004)).

The court's authority to grant a new trial, however, should be used cautiously and sparingly. *United States v. Cole*, 537 F.3d 923, 926 (8th Cir. 2008) (citation omitted). "Rule 33 is [an] unusual remedy that is reserved for 'exceptional cases in which the evidence preponderates heavily against the verdict.' " *United States v. Anwar*, 880 F.3d 958, 970 (8th Cir. 2018) (alteration in original) (quoting *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002)). "Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Campos*, 306 F.3d at 579.

### B. Allegations of *Brady* Violations

Jesse alleges that the government violated *Brady* by never disclosing EW's mental health and counseling records and by not disclosing her admission that she liked "rough" sex until trial. *See* Docket 337 at 10. To make out a *Brady* violation, a defendant must show (1) the evidence is "favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) the government suppressed that evidence; and (3) the evidence is material to either guilt or punishment. *United States v. Tyndall*, 521 F.3d 877, 881 (8th Cir. 2008) (citing *Morales v. Ault*, 476 F.3d 545, 554 (8th Cir. 2007)). "The evidence is not material . . . unless there is a reasonable probability that the verdict would have been different if the evidence had not been suppressed." *Id.* at 881 (citing *Morales*, 476 F.3d at 554).

"The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). This is not a "sufficiency of the evidence" test; rather, the touchstone is whether the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 434-35.

Under *Brady*, prosecutors have a duty to learn of and disclose favorable evidence known by law enforcement. *Tyndall*, 521 F.3d at 882.

Prosecutors do not, however, have an obligation "to seek out such evidence" from other third parties. *United States v. Riley*, 657 F.2d 1377, 1386 (8th Cir. 1981) (quoting *United States v. Walker*, 559 F.3d 365, 373 (5th Cir. 1977)).

### 1. EW's Mental Health or Counseling Records

Jesse does not actually identify any mental health or counseling records that the government did not disclose. Jesse's argument is that some such records must exist because after being informed that "to the extent [she] ha[d] received any mental health treatment, she ha[d] a privacy right in communications and records relating to that treatment[,]" she "unequivocally invoked her therapist-patient privilege, without exception." Docket 193 ¶¶ 6-7; Docket 337 at 10; *see* Fed. R. Crim. P. 17(c)(3). Jesse also argues that EW's familiarity with the terms "survivor mode" and "battered woman" show that she has received mental health treatment. *See* Docket 337 at 9; Docket 340 at 123, 206.

But to make out a *Brady* violation, Jesse must do more than show that such records exist. He must also show that the government failed to disclose them to him. The government has consistently maintained that it does not have any mental health or counseling records in its possession. *See* Docket 115 at 11; Docket 161 at 13; Docket 169 at 2; Docket 339 at 13. It also states that it "did not seek out" such records at any time, Docket 339 at 13, and it was not under any obligation to do so. *Riley*, 657 F.2d at 1386.

There was thus no *Brady* violation related to any mental health or counseling records.

## 2. EW's Admission That She Liked "Rough" Sex

On direct examination, the government asked EW questions about the type of sex she had with Jesse before the incidents at issue in the trial. She admitted that there were times when the sex involved spanking and that she had previously "ask[ed] him to strangle her . . . [but] not to the point of unconsciousness." Docket 340 at 119-20. She agreed with the government's characterization that by this admission she meant that she would "ask him to . . . squeeze [her] throat." *Id.* at 120.

Jesse argues that, despite this information being favorable to a theory of defense that he had made known to the government "well in advance" of the first pretrial conference in May 2021, "the prosecution delayed its disclosure until EW testified." Docket 337 at 16-17. According to Jesse, FBI Special Agent Stephen Beery "confirmed on cross-examination that the information of EW's sexual proclivities (rough sex/erotic asphyxiation) had been revealed to the [prosecutor] and agents during trial preparation." *Id.* at 10.

Agent Beery's testimony is less clear than Jesse suggests, however.[4] The relevant exchange was as follows:

---

[4] None of the parties ordered a transcript of Agent Beery's trial testimony. The court reviewed a draft transcript of his entire testimony and listened to the recording of the pertinent portions.

Q: Was she ever asked questions about whether or not she liked rough sex or having her partner pressure her or place pressure upon her neck?

A: Not --

Q: During sexual intercourse?

A: No just --

Q: You heard her admit here in court --

A: Yes. I heard her testimony in court.

Q: That was the first you heard about it?

A: We had talked about it in, you know, while preparing her for trial but there was nothing before that.

Q: When you heard about it preparing for trial, did you write a report about it?

A: No.

Q: So how would we as the lawyers know about that if you didn't write a report? We'd have to wait for the government to bring it up?

A: I guess we don't generally write reports for trial prep type situations.

Q: Oh, so if there's information that might be consistent with a defense perhaps or some other form of strangulation other than one perpetrated by my client, you didn't think that would be important for us to know?

A: Well, as you heard in the -- if I may reference her testimony?

Q: Sure.

A: There was certainly a difference between erotic asphyxiation and strangulation. And I think she specifically said, you know, once she began getting strangled she did not appreciate engaging in that sort of thing anymore.

Q: So you believe she's telling the truth I guess?

A: Yes.

11

> Q: And so if she had some kind of propensity to do something to herself, that question never even got asked. That auto-erotic concept, that question was never asked in that meeting you had with her, was it?
>
> A: No. That was never asked.

From counsel's first two questions and Agent Beery's first two answers, it appears that Agent Beery denied that the government had asked EW during trial prep whether she liked to have her partner put pressure on her neck, or to "squeeze" her neck, to use the term from EW's testimony. This is consistent with the government's representation of this conversation in their brief. According to the government, after Jesse filed a notice that he intended to offer evidence that she liked to be strangled during sex, the government advised her of this, and EW "maintained that she did not consent to any of the conduct" in the period relevant to these charges. Docket 339 at 11. Further, "[w]hen asked if she had ever asked Jesse [ ] to strangle her like he did in July 2019, E.W. maintained she had not. E.W. did not disclose that she enjoyed experiencing violence during sex." *Id.* Partly because counsel cut off Agent Beery's first two answers, it is unclear what exactly is being referenced by each of them when they use "it": counsel asks whether EW's testimony was the first Agent Beery had heard of "it," and Agent Beery admits that they had discussed "it" in preparing for trial.

But even assuming the government failed to disclose favorable evidence, Jesse still cannot make out a *Brady* violation. "Under the rule in [the Eighth [C]ircuit[,] *Brady* does not require pretrial disclosure, and due

12

process is satisfied if the information is furnished before it is too late for the defendant to use it at trial." *United States v. Spencer*, 753 F.3d 746, 748 (8th Cir. 2014) (quoting *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005)); *United States v. Streb*, 36 F.4th 782, 787 (8th Cir. 2022) (same). This means that Jesse "must prove that the government's delay in disclosing the information at issue deprived that information of its usefulness and that this deprivation materially affected the outcome of his trial." *Spencer*, 753 F.3d at 748.

Here, EW's admission that she had previously asked Jesse to squeeze her throat during sex was not deprived of its usefulness. The jury heard this admission directly from EW, and Jesse's counsel had the opportunity to cross examine her about this information.[5] Docket 340 at 120. Defense counsel then reminded the jury of EW's admission during his cross-examination of Agent Beery and brought up EW's admission twice during his closing argument. And the jury was instructed as follows: "Consent may be verbal or implied based on the facts, circumstances, and evidence

---

[5] During the final pretrial conference, the court found that Jesse's motion to admit evidence that EW had consented to strangulation was not sufficient because it failed to describe the evidence with any specificity, as required under Federal Rule of Evidence 412(c). *See* Docket 291 at 2-3; FTR Gold: Pretrial Conference in *United States v. Sierra*, Rapid City Courtroom 1 at 1:00:00-1:01:30 (October 21, 2022). The court thus prohibited defense counsel from questioning EW about this. FTR Gold at 1:00:00-1:01:30. But as the court explicitly instructed in ruling on other pretrial motions during the pretrial conference, counsel was free to ask the court to reconsider this ruling given EW's direct testimony, but he did not do so. *See* FTR Gold at 11:58:00-12:00:20; 12:05:20-12:06:10.

presented to you. Violent sex acts that are nonetheless consensual between the parties are not a crime." Docket 319 at 5.

The court also permitted Jesse's counsel to question Dr. Anne Fisher,[6] the government's expert who testified about the signs and effects of strangulation, about whether consensual strangulation was a possible source of the injuries. On cross-examination, defense counsel asked Dr. Fisher about erotic and autoerotic strangulation, whether either of those phenomena could be the cause of EW's injuries, and whether the government had asked her to consider those as a possible source of EW's injuries. Jesse argues, however, that defense counsel "was unable to rebut Dr. Fisher's offer that the ligature marks did not appear to be from 'erotic' or 'auto-erotic' asphyxiation as [he] had no time to secure such an expert not knowing that EW would admit at trial she enjoyed being asphyxiated to highlight her sexual experience." Docket 337 at 14.

But Jesse suggests that EW's injuries being the result of consensual erotic or auto-erotic asphyxiation was part of his theory of defense "well in advance" of May 2021, which was 15 months before the trial. *Id.* at 17. Additionally, the government filed its expert notice for Dr. Fisher in April 2021, and Jesse did not need to wait until he had an admission from EW before securing a rebuttal expert. *See* Docket 123.

---

[6] The parties did not request a transcript of Dr. Fisher's testimony. The court has relied on its recollection and its notes of her testimony in ruling on the motions.

Jesse next argues that he was deprived of the usefulness of EW's admission because if the government had disclosed it earlier, he would have renewed his motion to subpoena EW's mental health and counseling records because this information would have provided the "specificity" required under *United States v. Nixon*, 418 U.S. 683 (1974). *See* Docket 337 at 11. Jesse previously moved under Federal Rule of Criminal Procedure 17(c) for a subpoena duces tecum to be issued to Monument Health "for complete medical and mental health records of [EW], for the time period January 1, 2018, through August 1, 2020, including but not limited to records relating to evaluation, treatment[,] or care for any physical and/or mental health issue." Docket 113. The court found that this request was not "adequately specific" because even though "[m]ore than the title of a document and conjecture as to its contents is required . . . defense counsel ha[d] not even provided the title of any documents [he] specifically seeks." Docket 118 at 2. The court was also concerned that defense counsel's belief that mental health treatment records existed was largely "based upon a statement allegedly made by [EW] to [Jesse]." *Id.* at 3 (citing *United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996).

Jesse renewed his motion for a subpoena, attempting to provide the court with "further specificity" Docket 135 at 1-2. The court denied the renewed motion, finding that the additional factual support "d[id] not adequately identify specific mental health records sought or even confirm

15

that any such records exist." Docket 192 at 2. EW's admission likewise would not have enabled Jesse to identify such records or even confirm that they exist. Despite counsel's conclusory claim that EW asking Jesse to squeeze her throat during sex prior to 2019 is a sign of "serious pre-existing mental health conditions of long standing" and "deep seated psychological or psychiatric disorders," he fails to explain how this is so. Docket 337 at 11, 13. The court thus concludes that there was no *Brady* violation because even if the government failed to disclose EW's admission until trial, this delay did not deprive that information of its usefulness and did not materially affect the outcome of his trial. *Spencer*, 753 F.3d at 748.

### C. Limiting His Proposed "Theory of Defense" Instruction

Jesse argues that the court erred in limiting his proposed "theory of defense" instruction. Docket 337 at 20. Jesse's proposed instruction was as follows:

> It is Defendant Jesse Sierra's position that between July 13, 2019, and July 21, 2019, he and [EW] had consensual sexual relations and that he did not use force against her will to engage in sexual acts and that any force used was inherent in the consensual sexual acts. Consent may be verbal or implied based on the facts, circumstances[,] and evidence presented to you. Sex acts, including violent sex acts that are nonetheless consensual between the parties, is not a crime.

Docket 290-1 at 1. The court refused this instruction because it was duplicative of Final Instruction No. 3. *See* Docket 320 at 1; Docket 319 at 5. Final Instruction No. 3 provided the elements for Aggravated Sexual Abuse and instructed the jury as follows: "Consent may be verbal or implied based

16

on the facts, circumstances, and evidence presented to you. Violent sex acts that are nonetheless consensual between the parties are not a crime." Docket 319 at 5.

"It is well established 'that a criminal defendant is entitled to a theory of defense instruction if a timely request is made, the evidence supports the proffered instruction, and the instruction correctly states the law." *United States v. Garrett*, 898 F.3d 811, 814 (8th Cir. 2018) (quoting *United States v. Robertson*, 709 F.3d 741, 747 (8th Cir. 2013)). This instruction should not be "a mere general or abstract charge," but rather "a specific instruction on his theory of the case that directs the jury's attention to consider the defense." *United States v. Christy*, 647 F.3d 768, 770 (8th Cir. 2011) (cleaned up).

The defendant is not, however, "entitled to a particularly worded instruction or to a judicial narrative of his version of the facts[.]" *Id.* (internal quotations and citation omitted). And when the court declines to give a theory of defense instruction, "there is no error if the instructions as a whole, by adequately setting forth the law, afford counsel an opportunity to argue the defense theory and reasonably ensure that the jury appropriately considers it." *Garrett*, 898 F.3d at 815 (quoting *Christy*, 647 F.3d at 770).

Here, the instruction given by the court directs the jury's attention to consider whether the sexual acts that gave rise to the aggravated sexual

17

abuse counts were consensual and specifically to whether any violence that occurred during such acts was consensual. *See Christy*, 647 F.3d at 770. The first sentence of Jesse's proposed instruction is nothing more than a "judicial narrative of his version of the facts." *See id.* As described above, Jesse's defense counsel had many opportunities to argue consent as a defense. Additionally, this instruction was given to the jury in such a way as to show that it was meant to clarify the second element of aggravated sexual abuse, and the court further instructed the jury that to find Jesse guilty of aggravated sexual abuse, it must find that the prosecution proved all five elements beyond a reasonable doubt. *See* Docket 319 at 5-6. The instructions as a whole thus "reasonably ensure[d] that the jury appropriately consider[ed]" Jesse's theory of defense, and the court's limiting of his proposed instruction was not error. *See Garrett*, 898 F.3d at 815.

## III. Motions for Judgment of Acquittal & Motions for New Trial Based on Insufficient Evidence

### A. Legal Standard

Rule 29 allows convicted defendants to file a motion for judgment of acquittal after a jury returns its verdict. Fed. R. Crim. P. 29(c)(1). The jury verdict "must be upheld 'if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt.' " *United States v. Espinoza*, 885 F.3d 516, 520 (8th Cir. 2018) (quoting *United States v. Taylor*, 813 F.3d 1139, 1146 (8th Cir. 2016)).

The Rule 29 standard is " 'very strict' and a jury's verdict should not be overturned lightly." *United States v. Boesen*, 491 F.3d 852, 855 (8th Cir. 2007) (quoting *United States v. Ellefson*, 419 F.3d 859, 862 (8th Cir. 2005)).

The essential elements of a crime for which a defendant is found guilty may be proven by circumstantial or direct evidence. *United States v. Baker*, 367 F.3d 790, 797 (8th Cir. 2004). "Th[e] court views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly, and accepts all reasonable inferences supporting the jury's verdict." *Boesen*, 491 F.3d at 856 (citing *United States v. Water*, 413 F.3d 812, 816 (8th Cir. 2005)). Unlike with a motion for a new trial, on a motion under Rule 29, "the district court is not to weigh the evidence or assess the credibility of witnesses[]" but rather is to evaluate the evidence in the light most favorable to the government to determine if a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Baker*, 367 F.3d at 797.

Dustin and Jesse each move for a new trial and for a motion for judgment of acquittal based on insufficient evidence. Because addressing each of these motions requires reviewing the evidence on each count, the court will address each defendant's motion for new trial and for judgment of acquittal together.

**B. Jesse's Motion for New Trial and Motion for Judgment of Acquittal**

### 1. Kidnapping

To find Jesse guilty of kidnapping, the jury had to find that the government had proved the following beyond a reasonable doubt: (1) Jesse unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away EW without her consent; (2) Jesse held EW for ransom or reward or otherwise; (3) Jesse voluntarily and intentionally transported EW, while she was unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away; and (4) the transportation was in interstate commerce. *See* Docket 319 at 3-4. EW's testimony addressed each of these elements. She testified that Jesse told her he would take her home, but after she got back in the car Dustin drove to Pine Ridge instead, and that when she tried to jump out of the moving car, Jesse pulled her back in. Docket 340 at 76-77, 80-81. He then repeatedly strangled her, ensuring that she was unconscious for most of the drive. *Id.* at 78-79. Jesse kept her with him for several days, during which she endured many beatings and sexual assaults from Jesse, and Jesse made her lie to his family and the police about why she was there. *Id.* at 83-85, 87, 97, 107, 222. After several days of being held on Pine Ridge, she testified that Dustin took her and Jesse to Chadron, Nebraska. *See id.* at 109.

EW's testimony was largely consistent with statements she made to hospital staff and police, and she explained that her initial lies about what

had happened to her were because she was still scared of Jesse and trying to protect him. *See, e.g.*, *id.* at 194, 211. Her testimony was also corroborated[7] by photographs and medical records documenting her extensive injuries, by the testimony of Dr. McClain,[8] the physician who treated her at the hospital, and by Dr. Fisher, who testified about common physical signs of strangulation. *See, e.g.*, Docket 331 at 17; Docket 333 at 22-32.

This is sufficient evidence for a reasonable-minded jury to find Jesse guilty of kidnapping beyond a reasonable doubt, *Espinoza*, 885 F.3d at 520, and Jesse's motion for judgment of acquittal under Rule 29 is denied. His motion for a new trial is similarly denied. Even though the court can assess the credibility of witnesses and weigh the evidence under Rule 33, this is not an "exceptional case[] in which the evidence preponderates heavily against the verdict." *Anwar*, 880 F.3d at 970 (internal quotation omitted).

## 2. Aggravated Sexual Abuse

To find Jesse guilty of aggravated sexual abuse as alleged in Count 2, the jury had to find that the government had proved the following beyond a reasonable doubt: (1) Jesse caused EW to engage in a sexual act, that is, contact between the penis and the vulva or penis and the anus, or

---

[7] This is not an exhaustive list of the ways in which EW's testimony was corroborated by other evidence.

[8] The parties did not order a transcript of Dr. McClain's testimony. The court has relied on its recollection of his testimony in ruling on these motions.

attempted to do so; (2) Jesse did so by using force against EW and without her consent; (3) Jesse did so knowingly; (4) Jesse is an Indian; and (5) the offense took place in Indian Country in the District of South Dakota. *See* Docket 319 at 5-6; 18 U.S.C. § 2246(2)(A). Jesse stipulated to the fourth and fifth elements. Docket 330 at 1.

Jesse argues there was insufficient evidence on this count because "[n]o force or threat of force was described in [EW's] testimony." Docket 337 at 26. EW testified that in the camper, "[a]fter [Jesse] got done beating [her] up, he started having intimate sex with [her]," that Jesse was "[n]ot gentle," that the sex was "forced," and that when she "w[as]n't getting beat, [she] w[as] getting raped." Docket 340 at 83-84, 98, 196, 199. This testimony, in addition to the photographs and other documentation of her injuries, is sufficient evidence for a reasonable jury to find that Jesse used force against EW.

Jesse also argues that there is insufficient evidence because there were no visible injuries noted during EW's pelvic exam. Docket 337 at 26. But as Dr. McClain testified, the lack of visible, physical injuries does not rule out the possibility of sexual assault. Jesse offers alternative theories for the pain that EW reported during the exam, but "the government's case need not rule out every reasonable hypothesis except guilt," as long as there is "an interpretation of the evidence that would allow a reasonable minded

22

jury to find the defendant guilty beyond a reasonable doubt." *United States v. White*, 794 F.3d 913, 918 (8th Cir. 2015) (cleaned up).

Jesse claims that a new trial is warranted on this count because EW told officers that Jesse raped her "too many times to count," but could only recall four specific instances during her testimony. Docket 337 at 24. But the jury only needed to find him guilty beyond a reasonable doubt for one such instance, and for the reasons described above, EW's testimony was largely consistent and corroborated. Jesse's motions for judgment of acquittal and for a new trial are denied as to Count 2.

### 3. Aggravated Sexual Abuse

The only difference between Count 2 and Count 3 is that Count 3 alleges that the sexual contact was between the mouth and the penis, the mouth and the vulva, or the mouth and the anus. *See* Docket 201 at 2; *Compare* 18 U.S.C. § 2246(2)(A), *with* § 2246(2)(B). Thus, although the language of the indictment refers generally to a "sexual act," because § 2246(2)(B) is the only subsection of the definition of sexual act that is referenced in Count 3, the government needed to prove the type of sexual contact specified in that subsection. The only evidence of such contact comes from EW's testimony that she had to give Jesse oral sex the day before she went to the hospital. Docket 340 at 201-02. At that point, however, Jesse and EW were no longer on Pine Ridge, but were in Crawford, Nebraska. *See id.* Because there was no evidence that such contact

23

happened in Indian Country in the District of South Dakota, Jesse's motion for judgment of acquittal on Count 3 is granted. His motion for a new trial on this count is denied as moot.

### 4. Interstate Domestic Violence

To find Jesse guilty of interstate domestic violence, the jury had to find that the government had proved the following beyond a reasonable doubt: (1) Jesse was a spouse, intimate partner, or dating partner of EW, (2) Jesse caused EW to enter or leave Indian Country, to wit, the Pine Ridge Indian Reservation, by force, coercion, duress, or fraud; and (3) in the course of, as a result of, or to facilitate that conduct or travel, Jesse committed or attempted to commit a crime of violence against EW. Docket 319 at 9-10.

Jesse argues only that there was insufficient evidence of the third element because EW told law enforcement and hospital staff that she had not been beaten by Jesse since she left the reservation and her testimony that Jesse forced her to perform oral sex on him was not credible given the testimony that her injuries prevented her from opening her mouth at that point. Docket 337 at 27-29. But even if there was no testimony about Jesse beating EW or forcing EW to have sex with him after leaving the reservation, there is still enough evidence for a reasonable jury to find him guilty beyond a reasonable doubt of interstate domestic violence. The second element is satisfied by either leaving or entering Indian country. And as described

above, EW testified about the repeated strangulations she endured from Jesse as they drove from Rapid City to the reservation, and her testimony was largely consistent and corroborated by other evidence. Jesse's motions for judgment of acquittal and for a new trial are denied as to Count 4.

### 5. Assault Resulting in Serious Bodily Injury

To find Jesse guilty of assault resulting in serious bodily injury, the jury had to find that the government had proved the following beyond a reasonable doubt: (1) that Jesse assaulted EW; (2) that as a result of that assault EW suffered serious bodily injury; (3) that the assault happened near Oglala and elsewhere, in Indian country, in the District of South Dakota; and (4) that Jesse is an Indian. Docket 319 at 11-12. Jesse stipulated to the third and fourth elements. Docket 330 at 1.

Jesse argues that there is insufficient evidence that any assault happened on the reservation because it was impossible for EW to fit in the box that she testified Jesse stomped her into Docket 337 at 29. He further argues law enforcement did not collect or send for analysis relevant items from the alleged locations of the assaults, and thus there is no DNA evidence to support EW's allegations. Docket 337 at 28. But DNA evidence is not required; EW's testimony, which the court finds to be consistent and corroborated, is sufficient evidence. She testified that Jesse beat her with closed fists in the camper, the first place they went to on the reservation. Docket 340 at 83. She also testified that he stomped her into a box, using

25

his feet to hit her on her ribs and face. *Id.* at 87. She testified about another beating she endured from Jesse at Dustin's trailer. *Id.* at 97. Any one of these provided sufficient evidence for a reasonable jury to find that Jesse assaulted her, and the photographs of her injuries and the testimony from Dr. McClain and Dr. Fisher provide sufficient evidence for a reasonable jury to conclude that EW suffered serious bodily injury. Jesse's motions for judgment of acquittal and a new trial are denied as to Count 5.

### 6. Assault by Strangulation of a Dating Partner

To find Jesse guilty of assault by strangulation of a dating partner, the jury had to find that the government had proved the following beyond a reasonable doubt: (1) Jesse assaulted EW; (2) Jesse committed that assault by means of strangling or suffocating, or attempting to strangle or suffocate; (3) EW was a spouse, intimate partner, or dating partner of Jesse; (4) the assault happened near Oglala and elsewhere, in Indian country, in the District of South Dakota; and (5) Jesse is an Indian. Docket 319 at 13-14. Jesse stipulated to the fourth and fifth elements. Docket 330 at 1.

Jesse argues only that EW's testimony about Jesse strangling her with a string of Christmas lights while on the reservation was not credible. Docket 337 at 29-30. But as described above, the court disagrees, and Jesse's motions for judgment of acquittal and for a new trial on Count 6 are denied.

26

### C. Dustin's Motion for Judgment of Acquittal and for New Trial

Dustin's motion presumes that the jury convicted him of both kidnapping and interstate domestic violence by reason of aiding and abetting. *See* Docket 336 at 5-10. To find Dustin guilty of either crime by reason of aiding and abetting, the jury was required to find that the government had proved the following beyond a reasonable doubt: (1) Dustin knew that the crime was being committed or going be committed; (2) Dustin had enough advance knowledge of the extent and character of that crime that he was able to make the relevant choice to walk away from the crime before all the elements of that crime were complete; and (3) Dustin knowingly acted in some way for the purpose of causing, encouraging, or aiding the commission of that crime. *See* Docket 319 at 15.

Dustin does not dispute that he drove EW from Rapid City to Pine Ridge or that he drove her, at least part of the way, from Pine Ridge to Chadron, Nebraska. *See* Docket 336 at 8-10. Instead, he argues that he had no knowledge that EW was in his vehicle or traveling between those places for any reason other than her own free will. *Id.* In support of his argument, Dustin points to EW voluntarily getting into his car when she left work in Rapid City and voluntarily getting back into his car a few more times as they made stops around Rapid City, before ultimately departing for Oglala. *Id.* at 8. He states that she never told him "that she wanted to be let out of the vehicle" and "that she was being held against her will," and that "[t]here

27

can be no intentional transportation when there is no knowledge that she did not want to be in the car or did not want to go to Oglala." *Id.*

From EW's testimony, however, a reasonable jury could conclude that Dustin knew that she was being forced to remain in the car and taken to Oglala against her will. EW testified that when they left their final stop in Rapid City, Dustin "was supposed to take a left to where [she] live[d], but . . . he went down towards Omaha [street]" towards Oglala. Docket 340 at 76. She testified that she asked him to "let her out in the city where [she] live[d]." *Id.* at 216. She also testified that she tried to throw herself out of the car, but that Jesse pulled her back in and then put her in a chokehold until she passed out. *Id.* at 77-78. She woke up, but then Jesse would do the same thing until she passed out again, and Jesse repeated this cycle "multiple times" on the way to Oglala. *Id.* at 79-80. From this, a reasonable jury could conclude that Dustin knew Jesse was taking EW to Pine Ridge against her will, that he knew this before they crossed into the Pine Ridge reservation, giving him the opportunity to walk away before all the elements of interstate domestic violence were completed, and that he knowingly kept driving for the purpose of aiding Jesse in taking EW to Pine Ridge against her will.

EW also testified that Jesse beat her and forced her to have sex with him inside Dustin's trailer, while Dustin was there, and that Dustin saw the bruises and other injuries to her face. *Id.* at 96-99. She testified that when

Jesse caught her after she tried to run for help, Jesse beat her in front of Dustin, and that she asked Dustin to help her. *Id.* at 101-02. Dustin did not help, but was "freaking out in the background . . . telling [Jesse] that he can't do this; he has a son." *Id.* at 102. Although Dustin is correct that mere presence is not enough to convict someone by reason of aiding and abetting, EW's testimony is sufficient evidence for a reasonable jury to find that Dustin knew Jesse was continuing to hold EW against her will and that he had enough advance knowledge to make the choice to walk away, but instead drove them to Chadron for the purpose of aiding Jesse in his kidnapping of EW. Dustin's motion for judgment of acquittal on both charges is thus denied. His motion for a new trial is similarly denied. Even though the court can assess the credibility of witnesses and weigh the evidence under Rule 33, this is not an "exceptional case[] in which the evidence preponderates heavily against the verdict." *Anwar*, 880 F.3d at 970 (internal quotation omitted).

## CONCLUSION

For the foregoing reasons, it is

ORDERED that Dustin Sierra's motion (Docket 338) to join Jesse's motion is granted, and the government's motion to require defendants to supplement their motions (Docket 339) is denied.

IT IS FURTHER ORDERED that Dustin's motion (Docket 336) for arrest of judgment, new trial, and judgment of acquittal is denied.

29

IT IS FURTHER ORDERED that Jesse's motion (Docket 337) is granted in part and denied in part. The motion for arrest of judgment and for a new trial is denied as to all counts. The motion for judgment of acquittal is denied for all counts except Count 3, for which it is granted.

DATED February 6, 2023

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

30